THE STATE OF KANSAS, *on the relation of L. B. Kellogg, Attorney General,* v. THE BOARD OF COMMISSIONERS OF RAWLINS COUNTY.

COUNTY SEAT — *Re-location* — *Petition, When Sufficient.* A petition to the board of county commissioners to order an election to re-locate the county seat, when said county seat had been originally located by a vote of the people of the county, and had remained for more than five years, must contain three-fifths of the names of the electors of the county as shown by the last assessment rolls of both real and personal property, to be sufficient to authorize the board to order such an election.

*Original Proceeding in Mandamus.*

THE opinion, filed at the session of the court in November, 1890, contains a sufficient statement of the case.

*L. B. Kellogg,* attorney general, *Hayes & Decker,* and *W. W. & W. F. Guthrie,* for relator.

*L. K. Pratt, S. W. McElroy, Albert Heming, Edwin A. Austin,* and *M. A. Wilson,* for defendant.

Opinion by Simpson, C.: This is an original action in this court to compel the board of county commissioners of Rawlins county to order an election for the re-location of the county seat of that county. On the 28th day of February, 1888, a petition was presented to the board requesting an election to be ordered upon the question of the removal of the county seat from Atwood to Blakeman. For more than five years before the presentation of such petition the county seat of Rawlins county had been located at Atwood by a vote of the people; and hence to authorize an election, the petition must contain the names of three-fifths of the electors of the county as they appear on the last assessment rolls. The petition presented by the Blakeman people to the board of county commissioners on the 28th day of February, 1888, contained the names of 1,010 electors of the county, whose names appeared on the last personal-property assessment roll. We place the number on that petition at 1,010 electors, not because the testimony clearly demonstrates that it contained that number, although it may be said that there is evidence tending to establish this as the number, but because we desire to give the relator the benefit of his strongest claims on all questions arising in this case. The personal-property lists required by § 65 of the tax law, (Gen. Stat. of 1889, ¶ 6911,) on file in the county clerk's office of Rawlins county, at the date of the presentation of this petition, contained 1,817 names. Of these, it appears that 330 are the names of females, deceased persons, non-residents, corporations and partnerships; and this number is to be deducted, leaving 1,487 as the number of electors of said county as shown by this list. If the personal-property list is the only list or assessment roll contemplated by § 4 of the chapter on county seats, (Gen. Stat. of 1889, ¶ 1889,) it is apparent that the petition of the Blakeman people contained the names of more than three-fifths of the electors of Rawlins county, and it was the duty of the county board to order the election as prayed for. But it is claimed that the board of county commissioners had a right to con-

34 — 44 KAS.

sider and be governed by the real-estate assessment list, as re-quired by § 43 of the tax law, (the same being ¶ 6889, Gen. Stat. of 1889,) and by the real-estate assessment list returned in the odd years. This claim is urged for two reasons, the first being the plain reading of § 4 of the county-seat act, and the second being the injustice of excluding those real-estate owners who are electors of the county, but whose names do not appear on the personal-property lists, from any participation in such an election. On the other side, it is contended that the proper construction of § 4 of the county-seat act is settled by this court in *County Seat of Linn Co.*, 15 Kas. 500, and the case of *The State, ex rel., v. Comm'rs of Phillips Co.*, 26 id. 419. To commence with the earlier case, it may be said that the statute under consideration in that case is not the present § 4 of the county-seat act; it was a section in the General Statutes of 1868, which reads as follows: "For the purposes of this act the number of the legal electors of the county shall be ascertained from the last assessment rolls of the several township assessors in the county." At the time of the passage of this act the only assessment roll prepared by township assessors was that of personal property. The real-estate assessment was made by the county assessor, and continued to be so made by the county assessor until March, 1869. The court construing this section in the light of the existing statutes providing for the assessment of property, held that it meant the personal-property lists only. BREWER, J., says: "The only assessment roll prepared by township assessors required or authorized at the time of the passage of this county-seat act was that of personal property, on which the assessor was required to place a list of persons, companies or corporations in whose name the personal property was listed. (Gen. Stat. 1040, § 61.)"

This construction was followed in the case of *The State, ex rel., v. Comm'rs of Phillips Co.*, supra. But in neither of these cases was it urged or claimed that the section included the real-estate assessment lists. There is a single expression in the last case only, that warrants the claim that is made for that

case being an authority to govern us in this case; but we reiterate the statement that neither in brief, argument or opinion in the latter case was the question of real-estate assessment lists thought of or mentioned.    The only question decided in the Phillips county case was, that in considering the sufficiency of the petition, the board of county commissioners had a right to add to the personal-property list the names of such persons whose property statements were found on file in the county clerk's office, that were omitted by the township assessors when they made out the personal-property list.

The present section was passed in March, 1883, long after it was made the duty of the township assessors to list and value both real and personal property.    It reads: "For the purposes of this act the county commissioners shall be governed by the last assessment rolls of the several township and city assessors of the county, and no petitioner shall be deemed a legal elector, unless he be an elector and his name appears on said rolls." At a time when only personal property was assessed by township assessors, the legal electors were to be ascertained from their assessment rolls.    At a time when both real estate and personal property are assessed by city and township assessors, the county boards are to be governed by their last assessment rolls.    Construing these two sections in the light of the duties imposed by other statutes upon township assessors, we have no doubt but that the legislature intended to include both the assessment rolls of real estate as well as that of personal property, as a basis to govern the county board in determining the sufficiency of such a petition.    In §§ 76, 77 and 82 of the tax law, the words "assessment rolls" are used with reference to both real and personal property, but in one of the most important sections of the law, (§ 139,) it refers to the real-estate assessment roll exclusively; so that, gathering the intent of the legislature as expressed in section four, from the use of similar language in the other statutes that define what assessment rolls consist of, it must be apparent that the assessment rolls referred to mean the assessors' returns of both real and personal property.    We conclude, therefore, that by the amend-

ment of the original section four, as made by the legislature in 1883, under which this case originated, that in determining the sufficiency of the petition, the board of county commissioners of Rawlins county must be governed by the last assessment rolls of the real estate and personal property made in the county prior to the presentation of this petition; that while the true construction was given the original section in the Linn and Phillips county-seat cases, and these cases were properly decided, that they do not control the construction of the amended section, and that we cannot give this section the construction claimed by the relator without doing violence to its plain language, and antagonizing several sections and provisions of the tax law.    Then there must be added to the fourteen hundred and eighty-seven names found on the personal-property assessment roll, the names of electors that appear on the real-estate assessment roll, and are not on the personal-property list.    This petition was presented to the board of county commissioners in February, 1888; the last returns assessing the real property of Rawlins county were those of the even year 1886, and those of 1887, that included the title to such real estate as was acquired from the United States between March 1, 1886, and March 1, 1887.    The real-estate assessment roll of 1886 contained 1,522 names, and that of 1887 contained 431 names, making a total of 1,953 names.

It is claimed on one side that after the real-estate assessment rolls have been purged, by excluding therefrom all non-residents, females, corporations, partnerships, and the names of those who are also on the personal-property assessment rolls, that there remain the names of 502 electors.    This is the number practically settled upon by the board of county commissioners, and probably the weight of the evidence is in its favor.    On the other side, it is asserted that after the real-estate rolls are thus purged, there remain but 218 names. So far as the decision of this case is concerned, it does not practically make any difference which number we adopt, as the result of either is fatal to the relator.    If 502 is added to 1,487, making 1,989, the three-fifths necessary would be

1,193, while if only 218 is added to the 1,487 on the personal-property list, the necessary three-fifths would be 1,023. In any event, the petition would lack from 13 to 183 electors. If we were disposed to be more critical, and weigh the evidence closely as to the number of the legal electors on the Blakeman petition, and as to the number of names that should be stricken from the personal-property list of 1887, these figures would be stronger against the relator. In this computation we take no account of the "Atwood strike-off," because it seemed to be conceded on the argument that if the real-estate assessment rolls were to be considered, the Blakeman petition is insufficient.

It is recommended that a peremptory writ of *mandamus* be denied the relator.

By the Court: It is so ordered.

All the Justices concurring.