FRANK MAYNARD

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa November 26, 1890.*

1. PERJURY—*authority to administer the oath—jurisdiction of the proceeding—both essential.* There is no perjury in false testimony alleged to have been given under the sanction of an oath, unless such oath was administered by some one having legal authority to administer it; and the case or proceeding in which the oath was taken must be one of which the tribunal or magistrate had jurisdiction.

2. SAME—*of the indictment—averment of such authority and jurisdiction.* Jurisdiction being an element without which there can be no

perjury, it must appear with certainty, from the indictment, that there was jurisdiction; but this may be done either by direct averment that there was jurisdiction, or by the statement of facts from which the court can see there was jurisdiction.

3. Jurisdiction, and authority to administer the oath, must be expressly averred in the indictment, or, in the absence of such express averment, such facts must be set out as will make them judicially appear; and the two things thus stated are alternative ones, and the indictment will be good if it contains either, but it need not contain both.

4. An averment in an indictment for perjury, that the police magistrate before whom the defendant testified, "then and there had full power and authority to administer the said oath to the said F. M. in that behalf," by necessary implication amounts to an averment that the police magistrate had jurisdiction.

5. It is a principle of pleading, that whatever is included in or is necessarily implied from an express allegation need not be otherwise averred. So an averment of the power and authority of a justice of the peace to administer an oath to a witness on the trial of a cause, necessarily implies that the justice had jurisdiction to try the case.

6. An allegation in an indictment for perjury, that the proceeding in which the false testimony was given was "a certain complaint, in due form of law, against F. M., for bastardy, before then duly made by one N., was duly depending," shows sufficiently that the proceeding was a prosecution of F. M. under the Bastardy law.

7. SAME—*defects in proceeding—in respect of which perjury is assigned—waiver.* Although a tribunal must have jurisdiction of the cause or proceeding before perjury can be committed therein, yet when there is a defect which renders the proceeding voidable, only, and such proceeding is amendable, or when the defects are waived by the parties and the cause is heard on the merits, then perjury may be committed.

8. So where the complaint in a proceeding in bastardy is so defective as not to justify the issuing of a warrant, yet if the defendant makes no motion to dismiss by reason of the defects, and goes to trial on the merits, he may commit perjury as a witness in the cause by giving false testimony.

9. SAME—*evidence—perjury—as to testimony in a bastardy proceeding.* A defendant, on his trial on a charge of bastardy, was sworn in behalf of the prosecution, and on his examination in chief denied having had any carnal intercourse with the prosecuting witness. On the next day, without having been sworn again, he testified in his own behalf, still denying such intercourse. He was indicted for perjury in respect of his testimony on his first examination, and on the trial under the indictment the court allowed the People to prove his denial on the second

examination : *Held*, that while such evidence was not admissible as proof of a substantive crime, there was no error in admitting it as showing that the defendant made no retraction during his examination.

10.  Where one is indicted for perjury in denying, on his trial for bastardy, that he had sexual intercourse with the prosecutrix, all the facts and circumstances tending to show such sexual intercourse are admissible against the defendant, notwithstanding they may also tend to prove other offenses, as, seduction and an attempt to commit abortion.

11.  BASTARDY—*of the complaint—its requisites, etc.* Under the statute, and section 6, article 2, of the constitution, protecting from unreasonable arrests, the complaint in a bastardy proceeding must be made by the mother, in case a child has been born, or, when made during pregnancy, the woman must allege that she is unmarried, and that she is pregnant with a child, which, by law, would be deemed a bastard, and she must accuse some person with being the father of such child, and such complaint must be in writing, and sworn to by her.

12.  From a statement in a complaint in bastardy "that said child is likely to be born a bastard," an implication arises that the mother is unmarried ; but such implication is not a necessary one, as a child born in wedlock may, under some circumstances, be a bastard.

13.  A complaint in bastardy, as follows : "The complaint of N. B., in said county, an unmarried woman, before C. D., one of the justices, etc., under oath, who says that she is now pregnant with a child, and that such child is likely to be born a bastard, and that F. M., of, etc., is the father of said child," and signed and sworn to, is insufficient to authorize the issuing of a warrant against the defendant.

14.  All of such complaint preceding the words "who says," is mere recital, and forms no part of that sworn to, and, taken as a whole, fails to show probable cause for the arrest of any one.

15.  SAME—*amendment of complaint.* A prosecution under the Bastardy act is a civil and not a criminal proceeding, and is therefore within the statute allowing amendments. The complaint, being amendable in form or substance, is not void, however defective it may be.

16.  SAME—*evidence—on the question of sexual relations.* The prosecutrix testified, in respect of a charge of bastardy, that she became pregnant by the defendant on April 20, 1887. The defendant denied having had sexual intercourse with her, and called a young man, who testified that he first became acquainted with the prosecutrix in the fall of 1888, and that between the 20th of March and the 20th of May following he had sexual intercourse with her three or four times, but he could not fix the dates. The court refused to permit this witness to state, in answer to questions, whether or not his acquaintance with the woman continued right along from the fall of 1888 until the 20th of March following, or whether or not he met her only occasionally during

the intervening time : *Held,* that the court erred in refusing to allow the questions to be answered.

17.  When pregnancy of a woman is relied on as tending to prove the sexual intercourse of the defendant with her on a certain day, any circumstances tending to show that her condition might have been caused by sexual intercourse with other men are properly admissible on the other side.   Therefore, *it is error to refuse to allow a witness to testify* that about the time of the alleged pregnancy he saw such woman out late at night with men and boys.

18.  On an issue involving the question whether the defendant had sexual intercourse with a young woman, when it was shown as a circumstance against him that he bought her a corset, it was *held,* that it was competent for him to show the fact that the mother of the young woman had sent an order to the girl's brother, requesting him to get a corset for his sister, and that, being unacquainted with corsets, he got the defendant to get it for him.   In such case, what passed between the defendant and the girl's brother was a part of the *res gestœ,* and admissible in evidence.

19.  EVIDENCE—*conversations.*  After a witness had testified to some damaging admissions of a defendant in a certain conversation, the defendant called another witness, who testified that he was present at such conversation and heard all of it, and that no such statements as those sworn to were made :  *Held,* error to refuse to permit the witness to answer whether, if any such conversation as that detailed had taken place, he would have heard it.

20.  SAME—*cross-examination—latitude in criminal cases.*  A liberal latitude in cross-examination should be allowed to a defendant in a criminal case, especially so in regard to the testimony of the principal witness against him.

WRIT OF ERROR to the Circuit Court of Whiteside county; the Hon. JOHN D. CRABTREE, Judge, presiding.

Mr. C. L. SHELDON, and Mr. C. C. JOHNSON, for the plaintiff in error:

The indictment does not aver that the justice had jurisdiction, or state facts showing jurisdiction.   Without jurisdiction no perjury could be assigned.   2 Bishop on Crim. Law, secs. 984, 994; Wharton on Am. Crim. Law, 653; 2 Archbold on Crim. Law, 952; 3 Greenleaf on Evidence, sec. 201; *Housh* v. *People,* 75 Ill. 490.

The indictment neither alleges that the justice had jurisdiction, nor does it state facts from which it is made to appear, and is therefore fatally defective. 2 Bishop on Crim. Proc. secs. 905, 907, 910; 2 Russell on Crimes, 597, 599, 637, 638; Wharton on Crim. Law, (2d ed.) 657, 658, 659; *People* v. *Burroughs*, 1 Park. Cr. 213; *Steniston* v. *State*, 6 Yerg. 551; *State* v. *Howard*, 63 Ind. 503; *People* v. *Collins*, 1 Mich. 138; *State* v. *Thurston*, 35 Me. 205; *State* v. *Plummer*, 50 id. 217; *Pankey* v. *People*, 1 Scam. 80; *Avery* v. *People*, 11 Ill. App. 333; *Morrell* v. *People*, 32 Ill. 501; *Myers* v. *People*, 67 id. 503; *Collins* v. *State*, 78 Ala. 434; *Anderson* v. *State*, 18 Tex. App. 17; *Robinson* v. *State*, 25 id. 111; *Stuart* v. *State*, 6 id. 184; *State* v. *Furlong*, 26 Me. 69; *State* v. *Street*, 1 Murphy, 156; *State* v. *Ammons*, 3 id. 123.

The proceeding in which the perjury is alleged to have been committed, was commenced under the Bastardy act. This is a special statutory proceeding before a justice of the peace, and in order to give the justice jurisdiction, it must appear—First, that the complaining witness is unmarried, when complaint is made before she is delivered; second, that she is pregnant; third, that the child, when born, will by law be deemed a bastard; and fourth, she must accuse some person with being the father of the child.

No presumption will be indulged in favor of the jurisdiction of the justice, but it must affirmatively appear. *Haywood* v. *Collins*, 60 Ill. 336; *Munroe* v. *People*, 102 id. 410; *Shufeldt* v. *Buckley*, 45 id. 223; *Trader* v. *McKee*, 1 Scam. 559; *Wells* v. *Mason*, 4 id. 89.

There is no allegation in the indictment that the justice had jurisdiction, and the only statement of facts is, that a complaint, in due form of law, against Frank Maynard, for bastardy, was pending before Goltman, a police magistrate. This allegation is not a statement of any fact, but a mere conclusion of the pleader. *Wells* v. *Mason*, 4 Scam. 89; *People* v.

*Crotty,* 93 Ill. 189; *Collins* v. *People,* 39 id. 233; *Williams* v. *State,* 2 Ind. 439.

The indictment must charge the crime with certainty and precision.    *State* v. *Godfrey,* 24 Me. 232; *State* v. *Philbrick,* 31 id. 401; *People* v. *Gates,* 13 Wend. 311; *Rex* v. *Wheatly,* 2 Burr. 1127; *People* v. *McNeis,* 89 Ala. 441; *Anthony* v. *People,* 29 id. 27.

Section 6, article 2, of the constitution of 1870, now requires that the complaint must show probable cause before a warrant can lawfully issue, and the complaint must be in writing, and sworn to.    This does not appear from the indictment.

The allegations that the complaining witness is unmarried, that she is pregnant, and that the child will by law be deemed a bastard, are each traversable allegations.    Every traversable fact must be alleged in the indictment.    4 Ency. of Law, 743; *State* v. *La Bon,* 26 Vt. 765.

The allegation that the complaint was in due form of law is the conclusion of the pleader.    A statement of a legal result is bad.    4 Ency. of Law, 744, note; 2 Chitty on Crim. Law, (4th Am. ed.) 227; *United States* v. *Hess,* 124 U. S. 483.

The allegation, "complaint against Frank Maynard, for bastardy," means Maynard was charged with being a bastard. Pleadings are construed most strongly against the pleader. *Rogers* v. *Hall,* 3 Scam. 5; *Titus* v. *Mabee,* 25 Ill. 257; *Bourland* v. *Sickles,* 26 id. 497; *Halligan* v. *Railroad Co.* 15 id. 558; *Vining* v. *Leeman,* 45 id. 247; *Henkel* v. *Heyman,* 91 id. 96.

The complaint is insufficient to confer jurisdiction on the justice.    All that precedes "who says," in said complaint, is a mere recital of the justice, and is no part of the complaint. *E. P. D.* v. *State,* 18 Fla. 175.

The complaint is fatally defective, for the reason the complainant, Margaret Nillen, does not state or swear that she is unmarried.    *E. P. D.* v. *State,* 18 Fla. 175; *Andrew G.* v. *Catherine A.* 16 id. 830; *Miller* v. *Munson,* 34 Wis. 579; *Caffrey* v. *Dudgeon,* 38 Ind. 512; *Snyder* v. *Shutts,* 53 Mich. 116;

*Housh* v. *People,* 75 Ill. 490.; *Torrey* v. *People,* 17 id. 105; *Ballance* v. *Curtenius,* 3 Gilm. 449; *Spurck* v. *Forsyth,* 40 Ill. 441; *Myers* v. *People,* 67 id. 503; *Avery* v. *People,* 11 Ill. App. 333; *Collins* v. *State,* 78 Ala. 434; *Williams* v. *State,* 29 id. 9; *Whitaker* v. *Gautier,* 3 Gilm. 443; *Smith* v. *State,* 4 Blackf. 188.

It was error for the court to allow the People to prove two distinct and separate offenses. *Baker* v. *People,* 105 Ill. 452; *Kribs* v. *People,* 82 id. 425; 1 Bishop on Crim. Proc. 1121-1123.

Mr. GEORGE HUNT, Attorney General, and Mr. WALTER STAGER, State's Attorney, for the People:

A suit which is actually void for want of jurisdiction or other incurable defect, is not one in which perjury can be committed; but if the proceeding is merely voidable, even though there be such defects as to require reversal on error, false swearing in its conduct is perjury.

In the following bastardy cases the complaint was made before the birth of the child: *Mann* v. *People,* 35 Ill. 467; *Maloney* v. *People,* 38 id. 62; *Allison* v. *People,* 45 id. 37; *Durham* v. *People,* 49 id. 233; *McCoy* v. *People,* 71 id. 111; *Connelly* v. *People,* 81 id. 379; *McElhaney* v. *People,* 1 Ill. App. 550; *Robnett* v. *People,* 16 id. 299; *People* v. *Stevens,* 19 id. 405; *Casman* v. *People,* 28 id. 230; *Pease* v. *Hubbard,* 37 Ill. 257.

In the following cases the complaints were made after the birth of the child: *Wilson* v. *People,* 26 Ill. 434; *McFarland* v. *People,* 72 id. 368; *Peak* v. *People,* 76 id. 289; *Lewis* v. *People,* 82 id. 104; *Rawlings* v. *People,* 102 id. 475; *Moore* v. *People,* 13 Ill. App. 248; 108 Ill. 484; *Mings* v. *People,* 111 id. 98.

As to the sufficiency of the complaint to give jurisdiction, see *Austin* v. *Pickett,* 9 Ala. 102; *Robie* v. *McNiece,* 7 Vt. 419; *Smith* v. *State,* 28 Ga. 19; *Zweifel* v. *State,* 27 Wis. 398; *Cook* v. *People,* 51 Ill. 146; *Baysinger* v. *People,* 115 id. 424.

The indictment shows jurisdiction in two ways: First, by stating facts which show it; and by allegation that the officer had power to administer the oath. 2 Russell on Crimes, (9th ed.) 61; *Halleck* v. *State*, 11 Ohio, 404; *State* v. *Cunningham*, 66 Iowa, 97; *State* v. *Newton*, 1 G. Greene, 160; *People* v. *Phelps*, 5 Wend. 9; *People* v. *Kelley*, 59 Cal. 272; *State* v. *Keel*, 54 Mo. 187.

Evidence tending to prove the accused guilty of an offense not charged in the indictment, is not on that account incompetent, if it tends to prove any fact constituting an element in the offense that is charged in the indictment. *Kernan* v. *State*, 65 Md. 253; *Weed* v. *People*, 56 N. Y. 628; *Hope* v. *People*, 83 id. 427.

If this was a bastardy suit, it would have been proper to show sexual intercourse between Maynard and Maggie, both before and after the child was begotten, and for a considerable time before and after. So it would have been proper to prove any acts showing intimacy. But it would not have been proper for the defendant to attempt to show Maggie had intercourse with any other person than himself outside the period of gestation. By what seems to be the usual rule, the proof of such intercourse would be restricted to a period a month before and a month after the alleged begetting of the child. *Holcomb* v. *People*, 79 Ill. 414; *Duffies* v. *State*, 7 Wis. 675; *Ronan* v. *Dugan*, 126 Mass. 176; *Duck* v. *State*, 17 Ind. 210; *Paull* v. *Padelford*, 16 Gray, 263; *Eddy* v. *Gray*, 4 Allen, 435.

Nor would evidence have been admissible that she had been in the habit of associating with young men whose reputation for chastity was bad. (*Eddy* v. *Gray*, 4 Allen, 435; *Moore* v. *People*, 13 Ill. App. 251.) Nor that she walked or rode with certain young men about the time when the child was begotten. *Maloney* v. *Pipert*, 105 Mass. 233.

Mr. JUSTICE BAKER delivered the opinion of the Court:

Frank Maynard, the plaintiff in error, was indicted in the circuit court of Whiteside county for the crime of perjury, and upon trial was convicted, and sentenced to the penitentiary for a term of two years. The charge in the indictment was, that on the 26th day of August, 1889, at the hearing before the police magistrate of the city of Sterling of a certain bastardy proceeding, he was sworn and examined as a witness, and feloniously, willfully, corruptly and falsely testified, in substance, that he never had sexual intercourse with Margaret Nillen, the complainant in. said proceeding, and that he did not have sexual intercourse with her at any time in the year 1889, nor within either six, four or three months previous to such examination.

It is urged that the motion interposed by plaintiff in error to quash the indictment should have prevailed ; that the police magistrate must have had jurisdiction in the bastardy case, or no perjury could be assigned ; that the indictment neither alleges that he had jurisdiction, nor states facts from which the court can see that he had jurisdiction, and that it is therefore fatally defective. All that there is in said indictment that is material to the question now under consideration, are the averments "that on the twenty-sixth day of August, in the year of our Lord one thousand eight hundred and eighty-nine, at the city of Sterling and in said county, a certain complaint, in due form of law, against Frank Maynard, for bastardy, before then duly made by Margaret Nillen, was duly depending before John M. Goltman, then and there a police magistrate in and for the city of Sterling, and then and there the matter of said complaint duly came on to be heard, in the presence of said Frank Maynard, before said John M. Goltman, as such police magistrate, and then and there, upon the said hearing of the matter of said complaint, in the presence of the said Frank Maynard, before said John M. Goltman, as such police

magistrate, said Frank Maynard appeared as a witness, and was then and there duly sworn as a witness therein by said John M. Goltman, as such police magistrate, and examined on said hearing touching the matter of said complaint, the said John M. Goltman, as such police magistrate, then and there having full power and authority to administer the said oath to the said Frank Maynard in that behalf."

The Criminal Code provides: "In every indictment for perjury or subornation of perjury, it shall be sufficient to set forth the substance of the offense charged upon the defendant, and before what court or authority the oath or affirmation was taken, averring such court or authority to have had full power to administer the same, together with the proper averments to falsify the matter wherein the perjury is assigned, without setting forth any part of the records or proceedings, either in law or equity, other than as aforesaid, and without setting forth the commission or authority of the court or other authority before whom the perjury was committed, or the form of the oath or affirmation, or the manner of administering the same." (Rev. Stat. 1874, chap. 38, sec. 227.) This statute is, substantially, the first and second sections of Stat. 23 Geo. II, c. 11.

There is no perjury in false testimony given under the sanction of an oath, unless such oath is administered by some one having legal authority, and the case, proceeding or matter in respect to which it is administered must be one of which the tribunal or magistrate has jurisdiction.    2 Bishop on Crim. Law, (5th ed.) sec. 1020.   Jurisdiction being an element without which there can be no perjury, it must appear with certainty, from the indictment, that there was jurisdiction; but this may be done either by direct averment that there was jurisdiction, or by the statement of facts from which the court can see that there was jurisdiction.   Here the allegation is, "the said John M. Goltman, as such police magistrate, then and there having full power and authority to administer the said oath to the said Frank Maynard in that behalf."   The

doctrine as stated by Bishop is, that jurisdiction and authority to administer the oath must be expressly averred in the indictment, or, in the absence of such express averment, such facts must be set out as to make them judicially appear, and that the two things thus stated are alternative ones, and that the indictment is good if it contains either, and that it need not contain both. 2 Bishop on Crim. Proc. (2d ed.) sec. 914. From the allegation in the indictment before us, that the police magistrate "then and there had full power and authority to administer the said oath to the said Frank Maynard in that behalf," it follows, by necessary implication, that the proceeding in which such oath was administered was one over which said police magistrate had jurisdiction. There is some conflict in the authorities in respect to the point in question, but the decided weight of authority is in favor of the proposition that the averment of competent authority to administer the oath is sufficient to show jurisdiction. *Rex* v. *Calaman*, 6 B. & C. 102; *Lacey* v. *Regina*, 2 Den. C. C. 504; 7 Eng. L. and Eq. 404; *Regina* v. *Lawler*, 6 Cox C. C. 187; *People* v. *Phelps*, 5 Wend. 9; *Halleck* v. *State*, 11 Ohio, 400; *State* v. *Newton*, 1 G. Greene, 160; *State* v. *Cunningham*, 66 Iowa, 97; *State* v. *Ammons*, 3 Mun. 126; *State* v. *Hough*, 6 Ired. 3; *State* v. *Davis*, 69 N. C. 495; *People* v. *Kelley*, 59 Cal. 272; *People* v. *Ah Bean*, 77 id. 12; *State* v. *Keel*, 54 Mo. 187; *Commonwealth* v. *Hughes*, 5 Allen, 501; *Commonwealth* v. *Hatfield*, 107 Mass. 229; *Commonwealth* v. *Butland*, 119 id. 320.

The conclusion we have reached is not inconsistent with the decision of this court in *Pankey* v. *People*, 1 Scam. 80, for there, although it was alleged in the indictment that the foreman of the grand jury had "lawful authority to administer the oath in that behalf," yet the facts to show jurisdiction were specifically alleged therein, and conclusively demonstrated the want of jurisdiction.

It is also urged, that from the allegation that the police magistrate had authority to administer the oath, the most

that can be said is, that an inference may be drawn that he had jurisdiction of the case, but that this would not be good pleading, even in a civil case. It is a sufficient answer to this claim to say, that in *Baysinger* v. *People*, 115 Ill. 419, which was a criminal case, wherein the defendant was convicted and sentenced to imprisonment in the penitentiary, it was expressly held, that it is a principle of pleading that whatever is included in or is necessarily implied from an express allegation need not be otherwise averred, and that an allegation in an indictment of the detention of a record from the office to which it belongs, necessarily implies a detention of it from the officer or lawful custodian of the same.

It is insisted that the indictment is insufficient, in that it does not state the substance of the offense, as is required by the section of the statute that we have quoted above. The claim is, that the averment that "a certain complaint, in due form of law, against Frank Maynard, for bastardy, before then duly made by Margaret Nillen, was duly depending," shows that the charge then and there pending against Maynard was his *being* a bastard. It is suggested in that behalf, that bastardy is defined by lexicographers and in the law dictionaries as meaning, "a state of being a bastard," and that at all events the language of the indictment is susceptible of two meanings, and that the pleading must be construed most strongly against the pleader.

The expression, a "complaint for bastardy," must receive a reasonable and natural interpretation. The courts will take notice that the law does not recognize "being a bastard" either as an offense against the State or as a violation of any private or personal right of any citizen, and to give the words the signification intimated would involve an absurdity. On the other hand, there have been in force in this State ever since the year 1827, statutes making provision for proceedings against the putative fathers of bastard children, for the purpose of compelling them to contribute towards the support, mainten-

ance and education of such children. (Rev. Laws 1833, p. 334; Rev. Stat. 1845, p. 85; Rev. Stat. 1874, p. 183.) In the act of 1827 the expressions, "charge of bastardy," "issue of bastardy," and other like expressions, are found, which were continued in the revision of 1833. The title of chapter 16 of the Revised Statutes of 1845 was "Bastardy," and the title of the act of 1872 (Rev. Stat. 1874, chap. 17,) is, "An act concerning bastardy," and the entire scope of both of said statutes was the institution and enforcement of proceedings against the reputed father of a bastard child, and the expressions, "charge of bastardy," "issue of bastardy," and the like, are found in both of said statutes. Moreover, the expressions, "offense of bastardy," "complaint for bastardy," "charge of bastardy," "bastardy warrant," "bastardy proceeding," "prosecution for bastardy," "bastardy case" and "bastardy bond," are found in very numerous reported decisions of the highest courts of the State, and always used and applied with reference to proceedings under the public statutes of the State against putative fathers of bastard children. And we are satisfied from the examinations which we have made, that the same and similar expressions have been used by the courts of most, and probably all, of the States of the Union, and always as designating or referring to statutory proceedings of like character against putative fathers of supposed bastard children. So there can be no doubt but that the words "complaint for bastardy," found in the indictment under consideration, meant a proceeding under the Bastardy act against the supposed father of a bastard child, and could not reasonably have been understood otherwise either by the courts, the jury, the defendant in such proceeding, or any one else. We think the motion to quash the indictment was properly denied.

It is claimed that the complaint which was made by Margaret Nillen before the justice of the peace, from whom a change of venue was taken to the police magistrate, was insufficient to confer jurisdiction, and that therefore it was error

in the circuit court, upon the trial of the case now in hand, to admit said complaint in evidence over the objections of plaintiff in error. Said complaint was as follows:

"STATE OF ILLINOIS, ⎱ ss.
 *Whiteside County.* ⎰

"The complaint of Margaret Nillen, in said county, an unmarried woman, made before J. W. Alexander, one of the justices of the peace in and for said county, under oath, who says that she is now pregnant with a child, and that said child is likely to be born a bastard, and that Frank Maynard, of Sterling, in said county, is the father of said child.

MARGARET NILLEN.

"Taken, signed and sworn to before me, this 9th day of August, 1889. J. W. ALEXANDER, J. P."

Section 1 of the Bastardy act reads as follows: "When an unmarried woman, who shall be pregnant, or delivered of a child which by law would be deemed a bastard, shall make complaint to a justice of the peace of the county where she may be so pregnant or delivered or the person accused may be found, and shall accuse, under oath or affirmation, a person with being the father of such child, it shall be the duty of such justice to issue a warrant against the person so accused, and cause him to be brought forthwith before him, or, in his absence, any other justice of the peace in such county." Section 6 of article 2 of the constitution of 1870 provides, that "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue without probable cause, supported by affidavit, particularly describing the place to be searched and the persons or things to be seized."

Plaintiff in error claims that under this statute and the constitutional provision of 1870 the complaint in a bastardy proceeding must be made by the mother; that when the complaint is made while she is pregnant, she must allege therein that

she is unmarried, and that she is pregnant with a child which by law would be deemed a bastard, and that she must accuse some person with being the father of such child, and that all these allegations must be in writing, and be sworn to by the mother. We fully concur in these several contentions. The complaint here in issue was insufficient to justify the issuance of a warrant. All that part of the complaint which precedes the words "who says," etc., is a mere recital, and forms no part of that which was sworn to. (*Miller* v. *Railroad Co.* 58 Wis. 310.) The complaint did not show probable cause.

It does not follow, however, that the further contention of plaintiff in error, that perjury can not be assigned for any false testimony given by witnesses upon the hearing of said complaint, on account of the want of jurisdiction in the police magistrate to entertain such ·complaint, should prevail. A prosecution under the Bastardy act is a civil and not a criminal proceeding. (*Scharf* v. *People*, 134 Ill. 240, and cases there cited.) It is therefore governed by the rules, and is within the statutes, allowing amendments. (2 Am. and Eng. Ency. of Law, 144; *Wilbur* v. *Crane*, 13 Pick. 284; *Bailey* v. *Chesley*, 10 Cush. 284.) It is within section 1 of the Statute of Amendments and Jeofails, which provides, "that the court in which an action is pending shall have power to permit amendments in any process, pleading or proceeding in such action, either in form or substance, for the furtherance of justice, on such terms as shall be just, at any time before judgment rendered therein." That which is absolutely void is not amendable, but that which is voidable, merely, can be amended. From the statement in the complaint, "that said child is likely to be born a bastard," an implication arises that the mother was an unmarried woman; but such implication is not a necessary implication, for a child born during wedlock may, under some circumstances, be a bastard. (1 Blackstone's Com. *457.) So, also, while the same statement is not a positive and unequivocal allegation that the child, "by law, would be deemed

a bastard," such as the statute requires, yet from it an infer-
ence arises that the child would, by law, be deemed a bastard
unless the mother married before its birth. In *Truitt* v. *People*,
88 Ill. 518, it was held by this court that even in a criminal
prosecution, if commenced by information or by affidavit, such
information or affidavit is amendable.

We understand the true doctrine to be, that although a tri-
bunal must have jurisdiction of the cause or proceeding before
perjury can be committed therein, yet that where the defect
renders the proceeding voidable, only, and not absolutely void,
and such proceeding is amendable, or where the defect has
been waived by the parties, there may be perjury committed.
See 2 Bishop on Crim. Law, (5th ed.) sec. 1028, and authori-
ties cited in notes. So, also, one may, if he will, and under
some circumstances, waive even a right which the constitution
secures to him. 1 Bishop on Crim. Law, secs. 842-850; 1
Bishop on Crim. Proc. secs. 112, 118, *et seq.* In the proceed-
ing here involved, plaintiff in error elected to waive the right
to quash the process or dismiss the complaint, and to go to a
hearing upon the merits, and introduced testimony. If such
conduct left the record destitute of an essential part, it per-
haps did not estop him from afterwards taking advantage of
the defect in it, in case of a conviction therein; but, at the
same time, it should be considered as a waiver of any right
to claim that perjury could not be assigned upon false testi-
mony given by him upon such hearing.

Our conclusion is, that perjury could be prosecuted for false
testimony given in the bastardy proceeding, and that there
was no error in the rulings of the circuit court in respect to
the complaint made in said proceeding.

The indictment charges that the perjury was committed on
August 26, 1889. It appears from the record that plaintiff in
error was sworn on that day, and examined as a witness on
behalf of the People, and gave the testimony alleged to be
false, and that on the next day, without being again sworn,

he testified in his own behalf. The admission in evidence of his denial on the 27th, of sexual intercourse, is assigned as error. Proof of such denial on the 27th, and after the introduction of proof of what he testified to on the 26th, was inadmissible as proof of a substantive crime. But we think such testimony was probably admissible, he not having been again sworn, for the purpose of showing that he did not, in his subsequent testimony, explain or qualify his testimony given in the first instance. The subsequent testimony was permitted to go to the jury upon the express ground it was admitted for the purpose of showing that the witness made no retraction during his examination. The court expressly instructed the jury, "that the indictment alleges the purjury to have been committed on the 26th day of August, 1889, and time in that respect is material, and the jury can not find the defendant guilty for any false statement made by him at any other time." Moreover, the fact that the defendant had sworn in denial of sexual intercourse by him with Margaret Nillen was not a controverted question of fact in the case. There was no reversible error in the admission of the testimony.

The circumstances relied upon as corroborative evidence of sexual intercourse were properly allowed to go to the jury. The fact that such circumstances tended to prove other offenses —seduction and an attempt to produce an abortion—did not render them incompetent. The fact that they tended to prove an element in the offense charged in the indictment made them admissible. It would occupy unwarranted time and space to consider in detail the relevancy of these numerous circumstances. Suffice it to say, that we regard them as tending to prove the controverted fact of sexual intercourse.

It is urged that the trial court refused to permit plaintiff in error to introduce proper evidence. The material issue of fact involved in the case, as we have already seen, was, whether or not there had been sexual intercourse between plaintiff in error and Margaret Nillen. There was an irreconcilable con-

flict in the evidence bearing upon that question. It was of
the utmost importance, in order that the jury might arrive at
a correct conclusion in respect thereto, that they should have
the benefit of every fact and circumstance legitimately calcu-
lated to throw light upon the matter. The prosecution was
allowed to show, as a corroborating circumstance tending to
show such intercourse, the fact that she was pregnant. She
testified that she became pregnant on the Saturday night be-
fore Easter Sunday, 1889, which was equivalent to saying that
her pregnancy dated from the 20th day of April of that year.
One George Fridley, a witness for the defense, stated in his
testimony that he first became acquainted with her the last of
September or first of October, 1888, and that between the 20th
of March, 1889, and the 20th of May, following, he had sexual
intercourse with her some three or four times, but could not
fix the dates of such intercourse. The court refused to permit
him to answer whether or not his acquaintance with her con-
tinued right along from the fall of 1888 until the 20th of
March following, or whether or not he met her occasionally
during each of the intervening months. We think that this
was error, and that the defense should have been allowed to
show that the witness and said Nillen were on friendly and
intimate terms, and frequently in the society of each other,
prior to the time of the alleged intercourse. It is at least im-
probable that a girl would submit to the embraces of one who
is a stranger or a mere casual acquaintance. The claim of
illicit commerce is more reasonable and credible where it ap-
pears that the supposed participants are, and for months have
been, upon terms of intimacy.

We also think it was error to refuse to allow the witness
William Flynn to testify that he saw said Margaret Nillen out
late at night with men and boys during the month of April,
1889. If the fact of pregnancy was a circumstance tending
to prove sexual intercourse with plaintiff in error, then it fol-
lows, by parity of reason, that any circumstances tending to

28—135 Ill.

show that her condition was or might have been caused by sexual connection with either Fridley or with other men or boys, would have detracted greatly from the probative force of such fact of pregnancy, as tending to prove intercourse with plaintiff in error.

James Leigh, a witness for the prosecution, swore that the plaintiff in error made certain damaging admissions to him on an occasion when he was at the livery stable of plaintiff in error. One Oliver Bouse, a witness introduced for the defendant below, testified that he was present on that occasion, and heard all the conversation between Maynard and Leigh, and that no such statements as those sworn to by Leigh were made. It was error to refuse to permit the witness to answer whether, if there had been any such conversation between Maynard and Leigh as that detailed, he, the witness, would have heard it.

One of the circumstances introduced in evidence against the defendant, Maynard, was the purchase by him of a corset for Margaret Nillen. The defense offered to prove by Mark Campbell that the mother of the girl sent an order to Willie Nillen, brother of the girl, who was working at the livery stable of Maynard, requesting him to get a corset for his sister, and the boy said he was no judge of corsets, and wanted Maynard to buy it. As we understand the testimony, what passed between Maynard and the boy in regard to the corset was part of the *res gestæ* connected with the matter of the purchase of the corset by the former, and it was therefore error to exclude the proffered testimony. The purchase of the article of clothing in question and giving it to Margaret Nillen was a circumstance which, unexplained, was likely to prejudice the case of the defendant in the minds of the jury, and his explanation of the transaction should have been permitted to go before them for their consideration.

We also think that the several questions asked Margaret Nillen on cross-examination, and in respect to which objections were made and sustained and exceptions taken, should have

been allowed. In view of the character and circumstances of the case, a liberal latitude of cross-examination should have been given the defendant, and especially so in regard to the testimony of the principal witness against him.

It is claimed that there were errors in the rulings of the court upon the instructions. We find, upon examination of the record, that the instructions given by the court stated the law applicable to the case, fully, fairly and with substantial accuracy. The thirteenth instruction for the People, and a few others, were not strictly accurate, but the defects in them can readily be corrected at another trial without their being here specifically pointed out.

For the errors of the trial court in excluding from the jury competent and proper testimony offered by plaintiff in error, the judgment is reversed, and the cause remanded for a new trial.

*Judgment reversed.*