THE STATE OF KANSAS v. JOHN GEREKE.

No. 14,833.    (86 Pac. 160.)

SYLLABUS BY THE COURT.

1. JURY AND JURORS—*Impaneling—Discharge.* In criminal as well as in civil cases the rule obtains that "it is not a substantial error for the district court to discharge a juror during the time the jury are being impaneled, although the juror may be discharged for an insufficient reason, where an unexceptionable jury is afterward obtained and where the party complaining has not exhausted his peremptory challenges." (*Stout v. Hyatt,* 13 Kan. 232.)

2. ——— *Selection from the Assessment Roll.* The statute requiring the jury-list to be selected from the assessment roll has reference to the assessment roll of real estate as well as to that of personal property, and in order for a person to be eligible for jury service it is not necessary that his name shall be upon the personal-property roll.

3. STATUTORY RAPE—*Cross-examination of Prosecutrix.* In a prosecution for statutory rape, where evidence of the birth of

The State v. Gereke.

a child has been introduced in corroboration of the story of the complaining witness, it is not necessarily error to sustain objections to questions asked of her on cross-examination the only purpose of which is to show that at about the time of the alleged commission of the offense charged she had been in company with other men. (See, *post*, p. 200.)

4. —— *Circumstantial Evidence in Corroboration—Instruction.* Where in a criminal prosecution the state relies upon direct evidence of the offense charged, and circumstantial evidence is introduced only for the purpose of corroboration, it is not error to refuse to give an instruction telling the jury what would be necessary to warrant a conviction on circumstantial evidence.

Appeal from Stafford district court; JERMAIN W. BRINCKERHOFF, judge. First opinion filed June 9, 1906. Affirmed. Rehearing allowed July 7, 1906. Second opinion filed November 10, 1906. Reversed.

*C. C. Coleman,* attorney-general, *G. W. Alford,* county attorney, and *Ray H. Beals,* for The State.
*Paul R. Nagle,* and *T. W. Moseley,* for appellant.

The opinion of the court was delivered by

MASON, J.: John Gereke was convicted upon a charge of statutory rape, and appeals. In the course of the impaneling of the jury, and, so far at least as the record shows, before the defendant had exercised any of his peremptory challenges, the court excused a talesman who had been examined only as to his residence, refusing to allow any inquiry as to his qualifications except in that connection. The defendant claims that the evidence failed to show any incompetence on the part of the juror and that it was error for the court to dismiss him. Whether or not the juror on the facts shown was competent to serve, no error was committed of which the defendant can complain, by reason of the rule thus stated in *Stout v. Hyatt,* 13 Kan. 232:

"It is not a substantial error for the district court to

discharge a juror during the time the jury are being impaneled, although the juror may be discharged for an insufficient reason, where an unexceptionable jury is afterward obtained and where the party complaining has not exhausted his peremptory challenges." (Syllabus.)

While this rule may not have been heretofore formally announced by this court except in civil cases, *Stout v. Hyatt* has been cited with approval in criminal cases upon the subject of the court's power to excuse jurors. (See *The State v. Miller,* 29 Kan. 43; *The State v. Sorter,* 52 Kan. 531, 34 Pac. 1036.) The rule is a sound one and there is no reason for limiting its operation.

A second complaint is made of the retention of a juror who was challenged by the defendant upon the ground that his name did not appear on the personal-property assessment roll. There was no showing that the juror's name was not on the real-estate assessment roll. The statute (Gen. Stat. 1901, § 3796) requires the original jury-list to be selected from the "assessment roll" of the preceding year. The expression "the last assessment rolls of the several township and city assessors of the county" (Gen. Stat. 1901, § 1867) has been construed to include both the personal-property and real-estate assessment rolls. (*The State, ex rel., v. Comm'rs of Rawlins Co.,* 44 Kan. 528, 24 Pac. 955.) In *The State v. Reed,* 53 Kan. 767, 37 Pac. 174, 42 Am. St. Rep. 322, it was strongly intimated that the words "assessment roll," as used in the jury law, should by the same reasoning be held not to refer exclusively to the personal-property roll but to include the real-estate roll as well. If the question is to be regarded as still open we now decide that to be the true construction of the phrase. It results that the challenged juror was not shown to be incompetent.

The complaining witness testified to the act relied upon for conviction, and in corroboration of this testi-

mony evidence was introduced of the birth of a fully developed child at the expiration of the usual period of gestation. She also testified that she had not had sexual intercourse with any person other than the defendant. Upon cross-examination she was asked whether at about the time she alleged the offense to have been committed she had not been at various specified places in company with other young men. Later a similar question was asked of another witness. Objections to this line of inquiry were sustained, and of this complaint is made. Before finally passing upon the question the court asked whether an attempt would be made to show acts of illicit intercourse with other persons and was informed by defendant's counsel that they admitted that they were unable to produce evidence to that effect. The questions asked regarding the complainant's relations with other men suggested no compromising or even indiscreet conduct on her part. The mere fact that she was in their company and that it might be said that there was a possibility that some one of them was the father of her child had no tendency to contradict her statement as to its paternity. The questions might have been permitted without unduly extending the latitude properly allowed in cross-examination, but it was not error to reject them.

The final complaint requiring consideration is based upon the refusal of the court to give an instruction as follows:

"A few facts or a multitude of facts proved all consistent with the supposition of guilt are not enough to warrant a verdict of guilty. In order to convict on circumstantial evidence, not only the circumstances must all concur to show the defendant committed the crime, but they must be inconsistent with any other rational conclusion."

In *The State v. Andrews*, 62 Kan. 207, 61 Pac. 808, it was held to be error to refuse such an instruction

in a case where the evidence against the defendant was partly circumstantial. There, however, although there was some direct evidence of the defendant's guilt, the situation was such that the conviction might have been due to the circumstantial evidence alone. Here the state's case was established by the positive testimony of the complaining witness, if that testimony was believed. Some circumstantial evidence was introduced, but it was incidental and was only important so far as it tended to corroborate the direct evidence referred to. It could not by itself have sustained a conviction. It is therefore obvious that the situation did not call for the instruction appropriate where circumstantial evidence is relied upon to establish the defendant's guilt, and the court committed no error in refusing to give it. The judgment is affirmed.

All the Justices concurring.

---

### OPINION ON REHEARING.
#### (87 Pac. 759.)
##### SYLLABUS BY THE COURT.

STATUTORY RAPE—*Cross-examination of Prosecutrix.* In a prosecution for rape, where the charge is that the defendant had sexual intercourse with the complaining witness with her consent, and the state relies upon the complainant's story, corroborated only by testimony that the defendant was with her at the time of the alleged intercourse and that at the expiration of the usual period of gestation she gave birth to a child, the defense should be permitted to cross-examine her fully regarding her association with other young men at about the time of her conception, even although no distinct offer is made to show that she had improper relations with any of them; and *held*, that under the facts of this case the refusal to permit such inquiry was material error.

The opinion of the court was delivered by

MASON, J.: Upon the first hearing of the defendant's appeal from a conviction upon a charge of statutory rape (the element of force being lacking) the

judgment was affirmed. The most serious question in-
volved was whether the cross-examination of the com-
plaining witness, a girl over seventeen years of age,
.had not been unduly restricted, and a doubt of the
correctness of the decision of this court on that ques-
tion led to the granting of a rehearing. Upon further
consideration the conclusion is reached that under all
the circumstances of the case a wider latitude should
have been allowed to the defendant in this respect, and
the former ruling as well as the judgment of the dis-
trict court will consequently be reversed.

The ruling complained of was the refusal of the trial
court to allow the defendant's counsel to cross-examine
the complainant with regard to her relations with
young men other than the defendant. The state had
offered no evidence regarding her habits or associates,
but relied upon her story, corroborated only by other
testimony that she was with the defendant at the time
of the alleged sexual intercourse and that at the ex-
piration of the usual period of gestation she gave birth
to a child. In order to show the precise manner in
which the question was presented practically the en-
tire record bearing upon the matter is here repro-
duced:

*(From the cross-examination of the complaining witness.)*

"Ques. Now, you stated that you never went with
anybody else but Johnnie Gereke? [She had not up to
this time made such a statement.] Ans. No, sir, I
never kept company with anybody else.

"Q. Is n't it a fact that during last fall and last win-
ter you were frequently out at night? [The offense was
charged to have been committed in November.] A. I
was out at night, yes.

"Q. With some of these young men around town?
(The state objects as not cross-examination.)

"Defendant's attorney: I am asking this for the
purpose of impeachment.

"Q. Did you not during the month of November
last keep company with [giving a man's name]? (The
state objects as being incompetent, irrelevant and im-
material, and not proper cross-examination.)

"The court: Objections sustained and exceptions allowed the defendant.

"Q. Did you not go up here to the restaurants with different young men around town during the month of October and November and December alone? (The plaintiff objects as being incompetent, irrelevant and immaterial, and not proper cross-examination.)

"The court: What is the purpose of this?

"Defendant's attorney: For the same purpose; for the purpose of impeachment.

"The court: Has n't she a right to do that?

"Defendant's attorney: Yes, sir.

"The court: Then how does it impeach her?

"Defendant's attorney: If she answers she did n't, I expect to show she did.

"The court: If it is your purpose to follow this up and show that she had sexual intercourse with any of these parties or any others about that time, that will be vital and it will be impeachment; but merely to show that she was with some other young man—I don't believe that cuts any figure in this case. If you assure me you expect to do that, however—

"Defendant's attorney: I don't know that I can do that.

"Q. Is it not a fact that you drove with a young man named [giving name] from here down to a Christmas tree down in your neighborhood along about the latter part of December, toward Christmas, and were with him that evening, 1904? (The plaintiff objects as being incompetent, irrelevant and immaterial, not cross-examination, which objection is sustained by the court, the defendant saving exceptions.)

"Q. Is n't it a fact that during October, November and December you were out with [giving name] and a young man by the name of [giving name] late at night? (The plaintiff objects as being incompetent, irrelevant and immaterial, and not proper cross-examination.)

"The court: Do you expect to rest with this line of inquiry, or do you expect to show by these other parties or anybody else or attempt to impeach her statement that she had no connection with anybody else?

"Defendant's attorney: I can't say whether these parties will testify to that or not. We expect to prove that she was out with other boys.

"The court: If I could see the purpose and inten-

tion of the defense was to overthrow her statement that she had no connection with any other boys this might be proper.

"Prosecuting attorney: We insist upon this matter. The state has some rights here. The question at issue is whether this defendant has had sexual intercourse with the witness. Whether she was at a party with this one or dance with that one or some place else with that one cannot be material in this case. Even if they can show that she had sexual intercourse it would not be material, because the question is, Did she have sexual intercourse with this defendant? I will ask the court to ask the counsel at this time what his purpose is in offering this testimony.

"Defendant's attorney: The testimony is for this purpose: to show, if we can, both for the purpose of impeaching her testimony and for the purpose of showing if we can that she has had ample opportunity around this town with other boys, more so than with this defendant; that others have had far more opportunities around this town, and that she has been seen with them at night, and that they have had far more opportunities than the defendant has had."

*(From the direct examination of one of defendant's witnesses.)*

"Ques. Do you remember this last December of seeing Miss Eva Stimatz [the complaining witness], this last December, at any place down in that neighborhood? Ans. Yes, sir.

"Q. Where was she? A. She was at the Christmas tree.

"Q. Do you know who she came with? A. [The name of a young man.]

"Q. Where did they come from? (The state objects as being absolutely incompetent, irrelevant, and immaterial.)

"The court: What is the purpose?

"Defendant's attorney: To draw any inference that may be drawn from it, that she was going around with other young men.

"The court: I don't think that is proper."

The birth of the child having been proved by the state, its paternity became an issue, and the rule of evidence in respect thereto was doubtless the same as

that adopted in prosecutions under statutes relating to bastardy, which is thus stated:

"Evidence that the complainant was in the habit of associating with men whose reputation for unchastity was bad is inadmissible. So, too, is evidence that the relatrix kept company with other men at a time when the child might have been begotten, though she has denied the fact, unless it is offered for the purpose of proving sexual connection with such men." (2 Encyc. Ev. 251.)

"Evidence that plaintiff kept company with other men at the time when the child might have been begotten is not competent unless offered to show sexual connection with such men." (5 Cyc. 660.)

In *Houser v. The State, ex rel. Lantz*, 93 Ind. 228, cited in support of each of these texts, it was said:

"In her cross-examination the relatrix stated that she kept no company with men other than the defendant in November, 1881 [the month in which the child was begotten]. She was not asked whether she had sexual intercourse with any other man than the defendant during that month. The defendant afterward, during the trial, proposed to prove that she had kept the company of other men in November, but, on the objection of the state, the evidence was not admitted. There was no error in excluding it. It would, at most, have only contradicted the relatrix upon an immaterial point. The fact that she kept company with other men made no difference, inasmuch as it was not proposed to prove that any of them had sexual intercourse with her." (Page 231.)

And in *Haverstick v. The State, ex rel. Haverstick*, 6 Ind. App. 595, 32 N. E. 785:

"The appellant, during the trial of the cause, offered to prove by himself that the relatrix was 'keeping company' with one Baldwin in August, and prior thereto— the relatrix having testified that the child was begotten in September, and to follow it up with proof that Baldwin was cognizant of the pregnancy of relatrix, and was, in fact, the first one who knew it. The court excluded this testimony, and the appellant insists that this was error. The alleged purpose of this testimony

was to show that the child was in fact begotten in August, and by some one other than the defendant. The court proposed to let the testimony go in if the appellant would follow it up with proof of sexual intercourse during August. Appellant's counsel then stated he would offer proof *tending to show* such intercourse. No effort was made, however, to introduce such testimony. We find no error in this ruling.

"The relatrix was not asked, upon cross-examination, whether or not, in August, she had sexual intercourse with Baldwin. She stated in her testimony that she did not keep company with Baldwin in August, or at any other time. By this denial the appellant was bound. He could not impeach her on an immaterial matter. That she kept company with another would in nowise tend to throw light upon the paternity of the child, and no effort was made to prove that she had illicit intercourse with Baldwin, or any one other than the appellant. The evidence was not competent." (Page 596.)

A condensed and substantially accurate statement of the general doctrine of that case is embodied in this syllabus of the opinion on rehearing, prepared by the editors of the National Reporter System (34 N. E. 99) :

"On trial of a bastardy case by the court without a jury it is not reversible error to refuse defendant's offer to prove that the relatrix was 'keeping company' with another man near the time when the child was conceived, where the defendant does not afterward offer proof tending to show that she had intercourse with the other man."

In *Ely v. Ott,* 14 Ohio Cir. Ct. 619, the scope of the decision was as thus indicated by the head-note:

"In a bastardy proceeding, testimony offered on behalf of defendant to show that at times from six months to a year prior to the time the prosecutrix conceived the bastard child she associated with a man other than defendant under circumstances and in situations that afforded them opportunities to have sexual intercourse, unaccompanied by an offer to prove that they had shown a disposition to have sexual intercourse, was properly excluded: first, because of the remoteness of the time; and, secondly, because evi-

dence of mere opportunities without evidence of disposition also to commit such acts was immaterial."

The learned judge who tried the case evidently had in mind the principle of these authorities, which apparently sustain his ruling, inasmuch as the defendant's attorney not only disavowed his ability to show that the complainant had had sexual intercourse with any one other than the defendant but failed even to state in express terms that his inquiry was directed to that end. However, it was fairly to be inferred that it was his purpose to elicit any information that might tend in that direction. It was not necessary in order to make his questions competent that he should undertake to adduce positive evidence of the complainant's having had illicit connection with other men. He had a right to pursue any line of investigation that was directed to developing conduct on her part that might even remotely suggest such relation. "Association with other men under suspicious circumstances near the period of conception should be allowed to be considered by the jury." (5 Cyc. 660, note 30.) In *Maynard v. The People,* 135 Ill. 416, 25 N. E. 740, cited in the same note, it was held to be error to reject evidence that the complaining witness in a bastardy case had been in company with other men and boys late at night during the month in which she became pregnant.

One of the questions asked and ruled out in the present case was whether the complainant had been out with other young men late at night. If she had the fact was not incriminating. In itself it was not even suspicious. But in view of what she had told of herself and of the possible inferences to be drawn from her appearance and manner, and from what might have proved to be the attendant circumstances, it cannot be said that the jury had no right so to regard it. That the defendant's attorney did not make a more definite statement of what he purposed to show, and

The State v. Gereke.

did not offer further evidence relating to the matter, may have been due to a lack of information which he was entitled to derive from the complainant upon cross-examination. Had an answer been required to the question asked, succeeding questions and answers might have brought to light matters the materiality of which would have been obvious. As was said of a similar situation in *The State v. Woodworth*, 65 Iowa, 141, 21 N. W. 490:

"We cannot presume that the defendant knew how the complainant would answer the question. He should, we think, have been allowed to have the answer, and then govern himself accordingly. Besides, the defense proceeded upon the theory that the complainant had been guilty of perjury. Somewhat depended upon not disclosing to her the exact purpose of the inquiry, or future plan of evidence, if one had been formed. We think that the defendant was entitled to considerable freedom in this respect, and that the question should have been allowed. . . . However it might have been answered, it might have led to an important inquiry." (Pages 144, 143.)

A charge of the character here involved is proverbially hard to defend against, as it is hard to establish. The defendant's difficulty in the present instance was the greater because the evidence produced by the state was so meager. Practically the case went to the jury upon the girl's statement and the man's denial. The case was peculiarly one calling for great liberality toward the defendant in regard to his conduct of his cross-examination of the complainant. For the reasons given we are constrained to hold that the narrower rule adopted resulted in substantial prejudice to the defendant, and a new trial is therefore ordered.

All the Justices concurring.