EDWARD L. HEREFORD

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 19, 1902.*

1. JURISDICTION—*not essential that certificate state that paper is one of general circulation.* If the record of a divorce proceeding shows an order in which it is recited that the notice of publication was regular and in due form and published according to law, the fact that the publisher's certificate fails to state that the newspaper is one of general circulation in the county does not show want of jurisdiction, since it will be presumed, in a collateral proceeding, that the court heard other evidence of that fact.

2. PERJURY—*jurisdiction by tribunal is essential to constitute false testimony perjury.* In order that the giving of false testimony under oath may constitute perjury, it is not only necessary that the oath be administered by one having legal authority, but the proceeding or matter in respect to which it is administered must be one of which the tribunal has jurisdiction.

3. SAME—*an indictment for perjury may be brought while other suit is pending.* While, in practice, a prosecution for perjury is frequently continued until the proceeding in which the perjury is charged to have been committed has been ended, yet the court trying the criminal charge may, in its sound discretion, proceed to final verdict notwithstanding the other case is still pending.

4. SAME—*what sufficient proof that accused swore to wife's desertion.* A charge that the accused swore, in a divorce proceeding, that his wife "deserted" him, is sustained by proof that he testified that he and his wife separated because she refused to live with him or to come to where he was after he had left his former home.

5. SAME—*not necessary that two witnesses swear contrary to defendant's oath.* A conviction for perjury may be had upon the direct testimony of one witness and proof of declarations of the accused inconsistent with the oath upon which perjury is assigned.

6. SAME—*accused's testimony may be proven by shorthand reporter.* In a prosecution for giving perjured testimony in a divorce suit, the testimony so given by the accused may be proved by the official reporter of the court who took the same, by reading a type-written transcript of his stenographic notes taken at the trial.

7. SAME—*effect where there are several assignments of perjury upon the same testimony.* Where there are several distinct assignments of perjury upon the same testimony in one indictment it is sufficient if any one of them be proved.

8. APPEALS AND ERRORS—*when the Supreme Court will not consider assignment of errors.* The Supreme Court will decline to search the record for errors which are claimed, in general terms, to exist, but which are not specifically pointed out.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. T. N. GREEN, Judge, presiding.

This is an indictment for perjury against the plaintiff in error, found by the grand jury of Peoria county on May 22, 1901. Upon the trial the defendant was found guilty. Motions for new trial, and in arrest of judgment, were made and overruled, and judgment was pronounced, sentencing the plaintiff in error for an indeterminate term in the penitentiary. The present writ of error is sued out for the purpose of reviewing the judgment of conviction, so rendered against plaintiff in error.

The indictment consists of four counts. The first count charges that, in a certain judicial proceeding, to-wit, a suit for divorce by plaintiff in error against Lena Hereford, his wife, pending in the circuit court of Peoria county, said court then and there having jurisdiction over said suit and the parties thereto, plaintiff in error upon the hearing of said cause willfully, corruptly, feloniously and falsely swore that he lived at No. 1529 South Adams street, Peoria; that he was and had been a resident of Illinois since he was born and had lived in Peoria for about fifteen years last past; that his wife, Lena Hereford, had separated from him for two years and two or three months last past, and for such time had refused to live with him; that he had tried to have her come back and live with him; that she refused so to do, and left him for the reason that he desired to come east from California; that she did not want to come east; that he was living but temporarily in Los Angeles, California; that his wife never had expressed any desire during the past two years and two or three months to come back and live with him; that he had requested her

to do so, but that she had absolutely refused to come back and live with him during said period of time; that he did not know of any cause he had given her for leaving him; that he had always been to her a true, dutiful and chaste husband; and that he did not know in whose handwriting a certain letter, then and there shown to him, was; that he so swore as aforesaid, after having taken a lawful oath administered to him by Percival G. Rennick, a deputy clerk of said circuit court having the authority to administer the oath to him; that the testimony so given by him was in regard to matters material to the issue then and there before the court, to-wit, the questions whether he was and had been an actual resident of Illinois for one whole year prior to the filing of the bill for divorce; also whether or not he was a resident of Peoria county at the time of filing said bill; also whether or not Lena Hereford, the defendant therein, had willfully deserted or absented herself from him without any reasonable cause for the space of two years prior to the filing of the bill for divorce, and whether or not she had refused to live with him during said two years, and whether or not he, during his marriage to her, had been a true, dutiful and chaste husband; that he knew, when he swore to the matters and things above stated, that the statements so made by him were false and untrue; that the said Lena did not desert him for or during the period of time aforesaid, and did not refuse to return and live with him; that he, during his married life with her, for a long period of time, to-wit, from January 1, 1897, to May 17, 1901, had been unfaithful to her and on divers and sundry times had been guilty of adulterous intercourse with a certain woman named Cora Strubel, *alias* Cora Wildmuth; that all this he then and there knew; that said letter was in his handwriting, and he then and there knew that such was the fact.

The second count charges that in a certain judicial proceeding, to-wit, a suit for divorce by him against his

wife, Lena Hereford, which was then and there heard
and considered in open court in the circuit court of Peo-
ria county by the court without a jury, the court had
jurisdiction and authority over the suit and the parties
thereto; that he, before he testified as a witness, took
a lawful oath administered to him by the deputy clerk
of said court, Percival G. Rennick, having authority to
administer the oath; that after so taking said oath, he
willfully, corruptly, feloniously and falsely swore that
he had been a resident of Illinois for fifteen years, last
past, prior to the time of giving his testimony; that this
statement was false and he knew it to be false; that the
testimony so given was in a matter material to the ques-
tion of his residence in Illinois for one whole year next
past before the date of filing the suit for divorce; that
it was material to show that he had been a resident in
the State for one whole year next before filing his bill,
and said fact was a point in question; that he had not
been a resident of said State for one whole year next be-
fore the filing of his bill and said fact was then and there
a point in question; that he had not been a resident in
said State for one whole year next before filing his bill
for divorce, but had for, to-wit, three months of the afore-
said year resided out of said State, and this he then and
there knew when he so falsely and corruptly swore, etc.

The third count charges that in a certain judicial pro-
ceeding in the circuit court of Peoria county, by the court
without a jury, the court then having authority to hold
and conduct the proceeding, which was a divorce suit
between plaintiff in error and Lena Hereford, his wife,
plaintiff in error was a witness and then and there swore
and gave testimony, and prior to the giving of such tes-
timony took a lawful oath which was then and there re-
quired and administered to him by the deputy clerk of
the court, one Percival G. Rennick, he having authority
to administer said oath; that the point in question before
the court was whether the defendant, Lena Hereford, had

willfully deserted or absented herself from her husband without any reasonable cause for the space of two years prior to the date of filing the bill for divorce in said court; that he as such witness, after taking the oath aforesaid, did willfully, falsely, feloniously and corruptly swear that she had willfully deserted him and absented herself from him for a period of two years prior to the filing of said bill, without any reasonable cause; that this statement was untrue; that she did not willfully desert him or absent herself from him for a period of two years; that he knew that she had not deserted or absented herself from him when he so falsely and corruptly swore, etc.

The fourth count charges that plaintiff in error was a witness in a judicial proceeding, to-wit, the divorce suit above described pending in said circuit court; that said court had authority to consider the cause and to administer oaths to witnesses therein, and administered to the plaintiff in error a lawful oath, by Percival G. Rennick, deputy clerk, said Rennick then and there having authority to administer said oath to him; that while then and there as a witness, after taking said oath, he willfully, feloniously, corruptly and falsely swore that during his married life he had been a dutiful, true and chaste husband and had never given her any reasonable cause to desert him; that he had not written a certain letter then and there shown to him, which letter purported to be and was in his handwriting and sent to his wife; that his wife had deserted him and at all times for the fifteen years last past he had been a resident of Peoria county in Illinois, and never in such time had been a permanent resident in California; that all this he falsely swore, knowing the same to be false; that he had not been a true and dutiful husband, and he knew this; that his wife had not deserted nor absented herself from him, and he knew this; that he had been a permanent resident of California within two years last past, prior to April 4, 1901, and this he knew; that he had by his own hand written

the said letter to his wife, and this he knew; that all the matters and things above set forth as having been sworn to by him were material to establish that he as complainant in the divorce suit had resided in Illinois one whole year next before filing his bill, and that his wife had deserted him as therein charged, and that he was entitled to a divorce from her as prayed in the bill, and that he had not written to her for the purpose of preventing her coming to him; that all these matters were material to the issue before the court, and points in question in said suit, etc.

GEORGE B. FOSTER, for plaintiff in error.

H. J. HAMLIN, Attorney General, and WILLIAM V. TEFFT, State's Attorney, (FRANK J. QUINN, of counsel,) for the People.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The first ground, upon which counsel for plaintiff in error insists that the judgment in this case should be reversed, is the alleged ground that the circuit court of Peoria county did not have jurisdiction in the divorce proceeding. The first and second counts of the indictment charge that the court had jurisdiction over the divorce suit, and the parties thereto.

Section 225 of the Criminal Code of this State provides that, "every person having taken a lawful oath * * * in any judicial proceeding * * * who shall swear or affirm willfully, corruptly and falsely, in a matter material to the issue or point in question, * * * shall be deemed guilty of perjury, * * * and shall be imprisoned in the penitentiary not less than one year nor more than fourteen years." (Hurd's Stat. 1899, p. 608). Perjury has been defined to be "an assertion upon an oath duly administered in a judicial proceeding, before a com-

petent court, of the truth of some matter of fact, material to the question depending in that proceeding, which assertion the assertor does not believe to be true when he makes it, or on which he knows himself to be ignorant." (Stephen's Crim. Law Dig. p. 82). The expression "judicial proceeding" as thus used, means a proceeding which takes place in or under the authority of a court of justice, or which relates in any way to the administration of justice, or which legally ascertains any right or liability. (*Regina* v. *Schlesinger*, 10 Q. B. 670). In order to constitute the offense of perjury in false testimony given under the sanction of an oath, it is not only necessary that such oath be administered by some one having legal authority, but the case, or proceeding, or matter, in respect to which it is administered, must be one of which the tribunal or magistrate has jurisdiction. (*Maynard* v. *People*, 135 Ill. 416; 2 Bishop on Crim. Law,—5th ed.—sec. 1020). In *Maynard* v. *People*, *supra*, we said (p. 425): "Jurisdiction being an element without which there can be no perjury, it must appear with certainty, from the indictment, that there was jurisdiction; but this may be done either by direct averment that there was jurisdiction, or by the statement of facts, from which the court can see that there was jurisdiction." (*State* v. *Lavalley*, 9 Mo. 834; *State* v. *Peters*, 197 N. C. 880).

Upon the trial in the court below, the proceedings, which took place in the divorce suit of the plaintiff in error against his wife, Lena M. Hereford, were introduced in evidence. The bill for divorce was filed on April 10, 1901, by plaintiff in error against his wife in the circuit court of Peoria county. The defendant therein, Lena Hereford, was brought into court by publication, and by the certificate of the clerk that he mailed to her a copy of the notice of the pendency of the suit. It is said, that the publication of the notice of the pendency of the suit was not sufficient to give the court jurisdiction over the defendant, Lena Hereford.

The certificate of publication introduced in evidence shows that the notice was published in a paper, called *The Trades and Labor Gazette.* The certificate was that of the publisher of this paper. The certificate shows that the notice was published for at least four successive weeks, and that the first publication was at least thirty days next prior to the May term of the Peoria county circuit court; and the certificate of the publisher complies with the requirements of section 1 of chapter 100 of the statutes of this State relating to notices, as amended by the act of June 11, 1897. (Hurd's Stat. 1899, pp. 1189-1191). The certificate of publication does not recite, that *The Trades and Labor Gazette* was a newspaper of "general circulation in the county." The absence of these words appears to be the objection, which counsel for plaintiff in error makes to the certificate of publication. The court, however, had the right to receive other evidence, that the paper in question was a newspaper of general circulation, than the certificate of the publisher to that effect.

On May 15, 1901, the circuit court of Peoria county in the divorce suit in question entered a default against Lena Hereford, the defendant therein. The order of the court, upon the default so rendered, recites that the clerk of the court has "caused to be printed and published in a public newspaper, printed and published in the city and county of Peoria, in the State of Illinois, a notice in due and regular form, stating the names of the parties to the suit; the title of the court wherein the suit is pending; the time and place of the return of the summons; the term of court to which said summons is returnable; and the pendency of this suit; that said notice was published according to law, once each week, for four weeks successively; and that thirty days and upwards intervened between the date of the first publication of said notice to the first day of the present term of this court, and that within ten days after the first publication of said notice, the clerk of this court caused to be mailed,

postage prepaid, a copy of said notice to said defendant, addressed to her last known place of residence, and, she failing to appear and make answer herein, it is ordered by the court that she be called to come into court and plead, etc., * * * whereupon it is ordered, adjudged and decreed by the court, that as to the said defendant, the said bill of complaint, and the matters and things therein contained, be taken as confessed." In this order it is recited by the court, that the notice of publication was in due and regular form, and that it was published according to law. Every presumption is indulged in to sustain the regularity of court proceedings, until the contrary appears. (*McElwee* v. *People*, 77 Ill. 493; *Hughes* v. *State*, 4 Iowa, 555). Every presumption will be indulged in to sustain the action of the court; and its action is presumed to be regular, until it is made to appear otherwise. (*Mackin* v. *People*, 115 Ill. 312). Here, the action of the court in holding the publication of the notice to be sufficient and regular will be presumed to have been warranted by the evidence, nothing appearing to the contrary.

In *Pierce* v. *Carleton*, 12 Ill. 358, where the record in an attachment case showed, that the notice was published in time, it was held that the place and manner of the publication might be shown by parol in aid thereof, and that the court would presume that the necessary proof was made.

In *Spellman* v. *Mathewson*, 65 Ill. 306, where the certificate of publication did not show that a paper, called *The Lockport Telegraph*, was published in Will county, we said: "The certificate of publication, it is true, does not show that *The Lockport Telegraph* was published in Will county, but the court could receive other evidence of that fact, and we must presume it did so, as was held in *Pierce* v. *Carleton*, 12 Ill. 358, and subsequent cases." (See also *Kerr* v. *Hitt*, 75 Ill. 51; *Pentzel* v. *Squire*, 161 id. 346). So, here, in the absence of proof to the contrary, it is to be presumed that the court had before it proper evidence

that the newspaper, in which the notice was published, was a newspaper of general circulation in Peoria county.

It is not here charged that the officer, who was the deputy clerk of the court, administering the oath to the plaintiff in error in the divorce case did not have authority so to do. "The official character of the officer administering the oath may be established by parol evidence of his acting *de facto*." In *Greene* v. *People*, 182 Ill. 278, where there was a trial for perjury committed before a master in chancery, proof introduced that the defendant was sworn as a witness before the master, was held to sufficiently establish, in the absence of evidence to the contrary, that a binding oath was administered to him; and it was there held, that the legality of the appointment of the master in chancery, or his power to administer an oath could not be questioned on the trial for perjury of one, who was alleged to have testified falsely before him; and we there said (p. 282): "He was acting in the capacity of master in chancery at the time, and, therefore, his authority to administer the oath cannot be questioned in this proceeding.—2 Wharton on Crim. Law, sec. 217; *Morrell* v. *People*, 32 Ill. 499."

It is said, that the testimony, given by plaintiff in error in the divorce suit, was in a proceeding which was still pending, and which had not proceeded to final decree when the present indictment was found against him. This objection is without force. In *Greene* v. *People*, *supra*, we said: "In practice, the prosecution for perjury is frequently continued until the proceeding, in which the perjury is charged to have been committed, has been ended. But it is a rule of convenience, only, and the court, trying the criminal charge, may, in its sound discretion, proceed to final verdict, notwithstanding the other case is still pending.—*People* v. *Hays*, 140 N.Y. 484."

Without question the circuit court of Peoria county in the divorce proceeding had jurisdiction over the subject matter of the suit. So far as plaintiff in error him-

self was concerned, in that proceeding he had placed himself and his cause within the jurisdiction of the circuit court of Peoria county. For the reasons already stated, we think that the trial court, in this criminal proceeding instituted against plaintiff in error for perjury, committed in the divorce suit, had a right to presume that the circuit court of Peoria county had jurisdiction in the divorce suit both over the subject matter and over the defendant, Lena Hereford. The evidence introduced sufficiently established the averment in the indictment that the court trying the case, in which the perjury was alleged to have been committed, had jurisdiction.

*Second*—One of the assignments of perjury is, that the plaintiff in error falsely swore, that he had been a resident of Illinois for fifteen years prior to the time of giving his testimony in the divorce suit.

Plaintiff in error and Lena Hereford, his wife, were married about the year 1877. For some twenty years they lived in Peoria where plaintiff in error had a drug store. He and his wife had two daughters. In 1897, owing to his wife's ill-health, plaintiff in error took his family to Los Angeles, California. There he started in the drug business, and left certain property, which he owned in Peoria, in charge of one D. J. Heineke, a brother of Mrs. Hereford, with the view of renting it, and, if possible, of selling it. Part of it, to-wit, the home in Peoria, was sold by Heineke. Plaintiff in error removed about July 12, 1899, from Los Angeles to Chloride, Arizona, taking his stock of drugs with him. He left his wife and family in Los Angeles, but kept up a correspondence with them. He returned home to Los Angeles on several occasions, spending several days on each visit. On May 1, 1900, plaintiff in error sold his store in Chloride, and went to San Francisco, California, where he was engaged in the business of running a grocery and saloon. There, his wife and one of his daughters called upon him in October, 1900. On February 1, 1901, he left San Francisco

and went to Supulpa, Indian Territory, from which place he wrote his last letter on February 5, 1901, to his wife. Shortly thereafter he came to Peoria, and on April 10, 1901, filed a bill for divorce against his wife, charging her with desertion.

It is insisted by counsel for plaintiff in error, that he left Peoria, Illinois, and went to Los Angeles, California, for the benefit of his wife's health, and made arrangements with his brother-in-law to take charge of his property while he was gone. The contention is, that the object, with which he left Illinois, and the arrangements which he made on leaving with reference to his property, indicated an intention to return to Illinois, and not to remain permanently in California. It is, therefore, contended that his statement as to his residence in Illinois was not a false statement.

Under the rule, that an indictment for perjury must show that the matter sworn to, assigned as perjury, was material, proof that plaintiff in error was and had been a resident of Illinois one whole year next before filing his bill, was material and necessary, in order to give the court jurisdiction. (2 McClain on Crim. Law, sec. 889; *Greene* v. *People, supra*). It is true, that the question of residence is, to a large degree, one of intention, and is to be determined as much by mental as by physical conditions. But, in the present case, the intention of plaintiff in error, as to his residence in Illinois, is established by his own admissions, as contained in letters written by him and introduced in evidence. When upon the witness stand upon the hearing in the divorce case, plaintiff in error was asked the following questions, and made the following answers, to-wit: "Q. Where do you live? A. At 1529 South Adams street, Peoria, Illinois. Q. How long have you been a resident of the State of Illinois? A. Since I was born. Q. How long have you lived in the city and county of Peoria? A. About fifteen years." As has already been stated, the proof shows, that plain-

tiff in error left Illinois in 1897, and remained away until the spring of 1901, a period of about four years. On January 19, 1900, he wrote a letter dated at Los Angeles, California, to D. J. Heineke, his brother-in-law, at Peoria, in which, speaking of the property in Peoria, he said: "I do hope you can sell both the places by spring. * * * We want to sell, because we never intend to return there to stay." On October 8, 1899, plaintiff in error wrote a letter from Chloride, Arizona, to his brother-in-law, in which, referring to his property in Peoria, he said: "I do not know as I ever will come back there to stay. I don't think I could be satisfied there any more. * * * I would like very much to be back there for a time, but I can't tell when that will be, maybe never." On December 1, 1899, he wrote a letter to his wife in which he said: "I would not think of going back there (Peoria). * * * I have no desire or intention of ever going there again to make it our home." On August 30, 1900, he wrote a letter from San Francisco, addressed to "My Dear Wife and Children," in which he said: "I wish we were back in old Peoria again, situated as we were, but I have given up all hope of ever being fixed so again."

These letters and others to be found in the record, containing similar expressions, when considered in connection with the facts, that he went into business in several places in the far west, that his two children married there, that his wife resided there, that he abandoned her, as will appear hereafter, that he expressed in a letter to his wife his love for another woman, Cora Strubel, and that the homestead in Peoria was sold, are sufficient to indicate an intention to abandon Illinois as his home, and to indicate the further intention of returning to Illinois in the spring of 1901 merely for the purpose of obtaining a divorce from his wife.

*Third*—Another assignment of perjury is, that plaintiff in error swore in the divorce suit that his wife, Lena Hereford, had willfully deserted him and absented her-

self from him for a period of two years prior to the filing of the bill, without any reasonable cause. It is contended by counsel for plaintiff in error, that the defendant never testified to the desertion of his wife, as thus set up in the indictment. The claim is, that in his testimony he did not use the word "desertion," but merely referred to the fact of a separation between himself and his wife.

His testimony upon this subject was as follows: "Q. When were you married to the defendant in this case? A. In 1877. Q. Where is she now? A. In California at Los Angeles. Q. When did you and she separate? A. Two years and two or three months ago. Q. What was the cause of your separation? A. Well, we could not agree. Q. Has she refused to live with you during those two years? A. Yes, sir. Q. How many children have you had from this marriage? A. Two. Q. Where are they? A. At Los Angeles, California. Q. Are they single or married? A. Both married. Q. Have you tried to have her come back and live with you? A. Yes, sir. Q. And she refuses to do that? A. Yes, sir. * * * Q. Where were you living at the time she left you? A. In Los Angeles. Q. What was the occasion of her leaving you; what excuse did she give for it? A. I wanted to come east and she did not want to come. Q. You were in Los Angeles at that time, were you? A. Yes, sir. Q. You were living there, were you? A. Yes, temporarily. Q. How long did you live there? A. About two years. Q. What time did you go there? A. About three and a half years ago; nearly four years ago. Q. Were you keeping house there? A. Part of the time. Q. When did you come back to Peoria? A. Last winter. * * * Q. Has she ever desired to come back and live with you since you say she deserted you? A. She never expressed any such desire. Q. Have you ever asked her to? A. Yes, sir. Q. Did she refuse? A. She absolutely refused. Q. Did you ever give her any cause for leaving you? A. I don't know as I ever did."

The letters of plaintiff in error, introduced in evidence, show the absolute falsity of the testimony thus given by him.   These letters are full of evidence, that his wife desired him to return to his family at Los Angeles after he left that place, and also that she expressed a desire to come to him from Los Angeles, but that he, if he did not actually forbid her doing so, discouraged her from doing so.   One of his daughters, Mrs. Lillian Engelbracht, testifies as follows: "Father went into the drug business shortly after arriving in Los Angeles.   We lived next door.   Father lived with the family.   In about two years, on July 12, 1899, he took his stock to Chloride, promising to be back every five or six weeks; bid us an affectionate good-by; wrote us frequently and came home in about six weeks; staid two weeks; slept with mother." On August 1, 1899, within two weeks after he arrived in Chloride, he addressed a letter to "My dear little Wife and Babies," and therein acknowledged the receipt of a letter from his wife, and one from his daughter; told how lonesome he was; wished they were with him; regretted that it was impossible just yet, and told them, "We will have to put up with this life for a while."   His daughter further testifies as follows:   "He returned to Chloride, telling us he would be back soon.   He came in October, 1899; his arm was broken; we nursed him; he stayed five or six weeks, and occupied the same bed-room mamma did.   He came back in January, 1900, for ten days; occupied the same room mother did; visited us again in April, 1900, for ten days; occupied same apartments mother did; he would go back, sell out, and be home in three weeks; he came back in July, 1900, for ten days; occupied same room mamma did; was always kind and affectionate."   His letters to his wife and children during the period, alleged by him to have been the period, during which his wife deserted him and abandoned him without any reasonable cause, are full of affection-

ate and loving phrases, and indicate that he and his wife were upon good terms.

In December, 1900, less than a year before he filed his bill for divorce, his wife sent him a railroad ticket, while he was in San Francisco, and asked him to return to Los Angeles, as is shown by his own letter of that date. In this letter he admits, that she requested him to return home. In a letter written four days later he says: "I wish you would not always bother me about coming to L. A. * * * You spoke of coming up here. That would be foolish, for I am not here half the time, and, when I am here, I am out from early morning until late at night. No, do as I tell you, and everything will come all right yet. I will return the ticket in my next if I don't come, as it is good until the 16th." On September 23, 1900, he wrote from San Francisco, saying: "You ask me if I want you to come up here. * * * No. * * * I would not ask it of you, because you could not stand this climate, * * * and besides I do not expect to remain here long." This letter contains an admission on his part of her desire to go to him. On January 8, 1901, he wrote a letter to her from San Francisco, therein admitting that, in her letter to him, she had requested him to return to Los Angeles, in which letter he says: "Lena, I can't come to L. A. now; too much has been said and done." On December 2, 1900, he wrote to his wife, and said he could not go back to Los Angeles.

The only difference, which seems to have taken place between himself and his wife, was due to the fact that he was carrying on a correspondence with the woman, Cora Strubel, and the fact of this correspondence was known to his wife.

His testimony, given upon the trial of the divorce case, as thus referred to, amounted to a statement, that his wife was guilty of desertion, because the separation of which he spoke, though he may not have used the word "desertion," was a separation, alleged to have been ac-

companied by a refusal on her part to come to him, or to
live with him. This refusal, according to his testimony,
followed upon his alleged request to her to come to him.
Not only does his testimony amount to a statement that
she deserted him, but his letters, containing his own ad-
missions, prove the falsity of the statement so made by
him. The evidence in such cases, in order to show per-
jury, need not be limited to proof of the exact words.
Proof of the substance is sufficient. (2 McClain on Crim.
Law, sec. 888; *Taylor* v. *State,* 48 Ala. 157). Although the
rule originally was that, in order to convict a person of
perjury there must be two witnesses swearing directly
contrary to the defendant's oath upon which the perjury
was assigned, yet the weight of authority now is, that
two witnesses are not necessary to disprove the facts,
sworn to by the defendant. If any material circumstance
be proved by other witnesses in confirmation of the wit-
ness, who gives the direct testimony of perjury, it may
turn the scale, and warrant a conviction. (*Mackin* v. *Peo-
ple, supra;* 1 Greenleaf on Evidence, sec. 257). The direct
oath of one witness, and proof of declarations of the
prisoner inconsistent with the oath in which perjury is
assigned, is sufficient. (*State* v. *Molier,* 1 Dev.—N. C.—264).
In the present case, the testimony, given by plaintiff in
error in the divorce suit, is contradicted both by the tes-
timony of his daughter and by the admissions contained
in his letters.

Counsel for plaintiff in error criticises the fact, that
the testimony given by plaintiff in error in the divorce
suit was proven by the official reporter of the court, who
took the testimony upon the hearing of the divorce case,
and that such official reporter was allowed, upon the
trial of this indictment for perjury, to read a typewrit-
ten transcript of his stenographic notes taken upon that
trial. We see no objection to this method of proving
what testimony he gave upon the trial of the divorce suit.
In McClain on Criminal Law, (vol. 2, sec. 888) it is said:

"The stenographer, who took down the evidence, may prove what the evidence was by reference to his notes."

*Fourth*—Another allegation of the indictment is, that the defendant falsely swore, that he did not know in whose handwriting a certain letter, shown to him while he was on the stand in the divorce suit, was. To our minds the testimony against plaintiff in error upon this point is conclusive. The letter in question is a letter dated February 5, 1901, at Supulpa, Indian Territory, written by the defendant to his wife. In that letter he confessed to his wife his love for the woman Cora Strubel, and therein says: "Lena, it is useless for you and me to ever think of living together happily again. I know just how you feel toward me. You could never trust me out of your sight; you would be miserable all the time, and so would I. Now I am going to make you one request; it is this: Get a divorce from me and I will marry this girl. It will be much better for you and for me. You will then not be always worrying about me, and I will not be compelled to live the wrong way. I know it's wrong, not only for us, but it wrongs you also, while, on the other hand, it would set us in a better light. You will have the property all to yourself, and, if you wish, no one need know anything about it, as it could all be done very quietly. * * * Now Lena, I have been honest and frank with you, and hope you will see this in a similar light; * * * tell me just what you will and what you will not do, so I can know what to depend upon." This letter of February 5, 1901, was shown to plaintiff in error, when he was upon the witness stand in the divorce suit, and the following questions were asked of him, and the following answers were given by him, to-wit: "Q. Examine the paper now shown you * * * and state if you recognize whose handwriting it is in. A. My name is not signed to it. Q. Do you know whose handwriting it is in? A. No, sir. Q. You don't know? A. No, sir." Upon the trial of this indictment

for perjury F. A. Heineke, a brother-in-law of plaintiff in error, swore that this letter was in the handwriting of plaintiff in error. His own daughter, Mrs. Lillian Engelbracht, also swore that this letter was in the handwriting of her father. We are unable to see how the falsity of the testimony, given by plaintiff in error, could have been more conclusively established than it was in this case.

*Fifth*—Another allegation of the indictment is that the defendant falsely swore that he had always been to his wife a true, dutiful and chaste husband. Upon the trial of the divorce proceeding he said: "Q. You have always been a true and dutiful husband, have you? A. Yes." This statement is proven to have been false by the letter of February 5, 1901, above referred to, and by other letters introduced in evidence and proven beyond question to have been written by him.

While the second count sets up the falsity of his statements as to his residence, alone, and the third count sets up the falsity of his statements as to his wife's desertion of him, yet the first and fourth counts set up several distinct assignments of perjury upon all of the various grounds hereinbefore mentioned. It is well settled, that, "if there are several distinct assignments of perjury upon the same testimony in one indictment, it will be sufficient if any one of them be proved." (Hughes on Crim. Law and Procedure, sec. 1663; 3 Greenleaf on Evidence, (Redf.) sec. 193; *State* v. *Blaisdell*, 59 N. H. 328; *Commonwealth* v. *Johns*, 6 Gray, (Mass.) 274; *Harris* v. *People*, 64 N. Y. 148; *Smith* v. *State*, 103 Ala. 57). "Where falsity of the statement in several particulars is charged, it is usual to assign the falsity of each, and proof of falsity as to any one particular assigned, if material, will be sufficient to warrant a conviction." (2 McClain on Crim. Law, sec. 883).

*Sixth*—It is contended, on the part of the plaintiff in error, that the instructions, some thirty in number, given by the court on the part of the People, were argumenta-

tive, and should not have been given. The respects, in which these instructions are said to be argumentative, are not pointed out to us by counsel in his brief. Where this court is thus referred, in general terms, to the record for errors alleged to exist, and which are not specifically pointed out, this court will decline to search for such alleged errors. We have decided, that we will not consider assignments of error of this character. (*Gilman* v. *People*, 178 Ill. 19; *St. Louis, Alton and Terre Haute Railroad Co.* v. *Bauer*, 156 id. 106). After a perusal of the instructions, however, we are of the opinion that, when considered as a whole, they correctly state the law, and, while there may be some slight error in some of them, such error is not sufficient to warrant a reversal. (*Lourance* v. *Goodwin,* 170 Ill. 390).

The only instruction, specifically referred to by plaintiff in error in the brief, is refused instruction numbered 2, asked by plaintiff in error. It is said that the court erred in refusing to give this instruction to the jury. In regard to this instruction counsel says that, inasmuch as plaintiff in error was charged with having sworn that his wife deserted him, it became important that the jury should be instructed as to the difference between separation and desertion. The instruction in question told the jury "that the words 'separate' and 'desertion' have distinct definitions, and do not mean the same thing, and a charge in an indictment for perjury that the defendant willfully and falsely swore, that his wife was guilty of desertion, cannot be sustained by proof that the defendant swore that himself and his said wife separated two years and two or three months ago." This instruction was properly refused, because it ignores a part of the testimony. Plaintiff in error did not testify merely to a formal separation between himself and his wife, but testified that that separation was because of her absolute refusal to live with him, or to come where he was after he had left his former home. The vice of the in-

197—16

struction is, that it ignores the testimony to the effect that separation was accompanied by such alleged refusal on her part. There is no distinction in meaning between a separation, accompanied by such refusal, and the statutory definition of desertion.

After a careful examination of the whole record, we are satisfied that the judgment of the court below was correct. Accordingly, the judgment of the circuit court of Peoria county is affirmed.         *Judgment affirmed.*