(No. 13493.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. ODD NILES, Plaintiff in Error.

*Opinion filed December 21, 1920.*

1. CRIMINAL LAW—*exact words of false testimony need not be set out in indictment for perjury.* By section 227 of the Criminal Code it is sufficient for an indictment for perjury to set forth the substance of the offense, and it is not required that the exact words of the false testimony be set out.

2. SAME—*acquittal is not a bar to subsequent indictment for perjury in giving false testimony.* If a defendant secures or influences his acquittal of a charge by giving false testimony his acquittal is no bar or estoppel to a subsequent indictment and trial on the charge of perjury.

3. SAME—*materiality of false testimony is a question of law in a prosecution for perjury.* In a prosecution for perjury the materiality of the alleged false testimony is a question of law and should not be submitted to the jury to determine as one of fact.

4. SAME—*in a trial for perjury the jury should not be instructed as to value of testimony of an accomplice.* In a trial for perjury committed on a former trial of the defendant on a charge of larceny and of receiving stolen property, an instruction as to the value and effect of the testimony of an accomplice is inapplicable to the case and should not be given, though an alleged accomplice to the larceny testified on the former trial.

WRIT OF ERROR to the City Court of Mattoon; the Hon. JOHN McNUTT, Judge, presiding.

BRYAN H. TIVNEN, (THOMAS R. FIGENBAUM, and HARRY I. HANNAH, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, EMERY ANDREWS, State's Attorney, and FLOYD E. BRITTON, for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error, Odd Niles, was indicted jointly with Sylvester Jackson and Frank Haskell in the city court of Mattoon, Illinois, at the March term, 1919. The first two

counts of the indictment charged them with the larceny on
September 24, 1918, of a Ford automobile of the value
of $300, the property of William Paxton. The third count
of the indictment charged them with receiving the automo-
bile for their own gain, to prevent the owner from again
possessing his property, knowing it to have been stolen.
Haskell and Jackson entered their pleas of guilty at the
same term the indictment was returned, and the former
was sentenced to the penitentiary and the latter to the re-
form school. Niles pleaded not guilty, was tried and ac-
quitted. At the September term of the city court, 1919,
Niles was indicted for having committed perjury in his
testimony while testifying as a witness in his own behalf
during his trial under the indictment charging him, Has-
kell and Jackson with larceny and receiving stolen property.
The first count of the indictment charges that on the trial
of Niles under said indictment it became and was a ma-
terial question whether Niles met or was with Haskell in
the city of East St. Louis at any time between September
24, 1918, and the day of the trial, and that Niles on said
trial testified in substance and to the effect that he never
got Haskell to go with him from Mattoon to East St. Louis
for the purpose of changing the number on the automobile
motor described in the indictment and that he never saw
Haskell in East St. Louis from September 24, 1918, down
to the day of his trial. The indictment alleges that testi-
mony was false and that in giving it Niles committed per-
jury. The second count alleges that on the trial of Niles
it became and was a material question whether he ever met
or was with Haskell on or about September 27, 1918, in
East St. Louis with the automobile Niles was charged with
stealing and receiving, knowing it to have been stolen, with
intent to deprive the owner of his property, or met Haskell
in East St. Louis for the purpose of changing the motor
number on said automobile; that Niles testified he did not
meet or was not with Haskell in East St. Louis at the

time or for the purposes mentioned, which was false and known to be false by Niles, whereby he committed perjury. The third count alleges that on the trial of Niles it became and was a material question whether on the 24th of September, 1918, for his own gain and to prevent the owner from again possessing his property, he received and aided in concealing the automobile of Paxton, then lately before stolen, and whether at the time when he received the automobile he knew the same to have been stolen; that Niles testified he did not so receive said automobile, which was false and untrue, whereby he committed perjury. Niles entered a plea of not guilty to the indictment, was tried, convicted and sentenced to the penitentiary. He has sued out this writ of error to review the judgment.

A brief statement of some of the testimony will help to a better understanding of the points raised on this record. Haskell and Jackson, with whom we became to some extent acquainted in *Miller* v. *People,* 292 Ill. 318, became witnesses for the prosecution in the trial of Niles on the former indictment and also on the trial of this case. They testified, in substance, that September 24, 1918, Niles was living in Mattoon, where they also resided, and on that day he asked them to steal a Ford car for him and promised to pay them $100 for it; that about 8:30 o'clock that night they stole the Paxton car from where it was parked in a street in Mattoon, drove it away, tried to change the number on the motor but did not succeed very well, and then drove it to Niles' house in Mattoon, and finding him absent left the car at his house. They did not see him again for three or four days, when he came back to Mattoon from East St. Louis and wanted one of them to go there with him and change the motor number, and said he had almost got into trouble about the car. Both of them testified Haskell went with Niles to East St. Louis, and Haskell testified that on their arrival there they went to the garage of Baker & Howard, got the car, drove into the

country, changed the motor number and drove the car back
to the garage. About October 1 Niles was again in Mat-
toon and told Jackson he wanted a bill of sale for the car;
that the police in East St. Louis were holding the car.
Jackson gave him a bill of sale, signing it A. J. Smith, and
executed it before justice of the peace Satterly, in Mattoon.

Niles testified he had been engaged in the automobile
business in Mattoon and while so engaged became ac-
quainted with Haskell and Jackson and had some business
transactions with them. He offered to buy a chassis from
them and they offered to take $150 for it, and he finally
agreed to take it if they would put a body or top on it.
The deal was made with Jackson. Niles told him he wanted
to drive it to East St. Louis, starting early next morning,
and Jackson promised to deliver it by seven o'clock next
morning at Niles' house. The car was delivered that night.
Niles was not at the house when it was delivered but re-
turned to the house about 8:30 o'clock and found the car
there. He drove it down-town to see Haskell and Jackson
and pay them for it, but not finding them he drove around
a while to see if the car was in good condition, and de-
cided to drive to his brother-in-law's, eleven or twelve miles
in the country, stay there all night and next morning drive
to East St. Louis. On arriving at East St. Louis he put
the car in the garage of Baker & Howard, where he left
it that night and part of the day. He was subsequently
arrested by an East St. Louis detective and taken to the
police station. At that time he had sold the car. He sold
it October 2 to Ike Cohen. Before selling it Cohen wanted
some information about Niles, and they went together to
a saloon and Niles told Cohen he could call up the Central
Trust and Savings Bank of Mattoon. The saloon-keeper
called up the bank, and after talking with someone Cohen
said he would take the car. Wyant was the saloon-keeper
and he paid Niles $330 for the car and Niles made him a
bill of sale for it. The next day after the sale Niles re-

turned to Mattoon and paid Haskell $150 in currency for the car. The night of October 3 he bought a car from one Gibler and on the morning of the 5th drove it to East St. Louis. It was about the 9th of October that Niles was taken to the police station, and the next morning he returned to Mattoon and saw Jackson and told him he wanted a bill of sale for the automobile, which was required by the "fellows" in East St. Louis. Jackson executed the bill of sale in Satterly's office. Niles returned to East St. Louis with the bill of sale, gave it to police officer Aldrich and the automobile was released. Up to that time there had been no change in the numbers on the motor. Niles had not seen Haskell in East St. Louis and had not asked him to go there and change the numbers. He denied he knew the car had been stolen and denied all statements of Haskell and Jackson in that respect and what they testified was said in the conferences with them in Mattoon. Niles testified the first suspicion he had the car was stolen was about October 17, when Jackson told him it was a stolen car. He then returned to East St. Louis to get the car, but the man he sold it to said he had sold it to his son. He then went to the son, who said he had spent $60 on the car and did not want to let it go. Subsequently the car disappeared.

There was much other testimony introduced on the trial, but as we have reached the conclusion that for errors in giving instructions for the People the judgment must be reversed and the cause remanded for a new trial we express no opinion as to the sufficiency or insufficiency of the evidence to sustain a conviction. As much of the argument of plaintiff in error is in support of his contention that the indictment was bad and that the court erred in overruling his motion to quash it, it is proper for us to pass on that question.

Each count of the indictment charges Niles testified, "in substance and to the effect," to the statements alleged to

be false and to have constituted perjury. It is urged this is not sufficient. By section 227 of the Criminal Code, in every indictment for perjury "it shall be sufficient to set ` forth the substance of the offense charged," etc. It is not required that the exact words of the false testimony be set out. (*People* v. *Miller,* 264 Ill. 148.) Each count alleges the trial at which it is charged Niles committed perjury was in the city court of Mattoon, "the Hon. John McNutt, judge, presiding;" that Niles was duly sworn by Lytle, clerk of said court, and concludes: "So the grand jurors upon their oaths say Niles committed perjury before the said Thomas M. Lytle, clerk of said court." In our opinion, while the indictment is clumsily drawn, it sufficiently charges the alleged false testimony was given before the court.

It is also contended that the third count is bad because under it Niles was required to be re-tried upon the charge of receiving stolen property,—the same offense of which he had been acquitted. That count, if good, required a trial on the question whether Niles committed perjury on his trial for receiving stolen property. If he secured or influenced his acquittal on that charge by giving false testimony his acquittal would be no bar or estoppel to his indictment and trial on the charge of perjury. Convictions for perjury under a similar state of facts were sustained in *People* v. *Ashbrook,* 276 Ill. 382, and *People* v. *Melnick,* 274 id. 616.

Other objections of a technical character are made to the third count, but we think they are not fatal, and the court did not err in overruling the motion to quash.

In a brief remarkable for its length, consisting of 210 pages, much criticism is made of thirteen instructions given for the People. It would require a treatise to discuss in detail all the objections raised. We have examined them and believe many of the objections made without substan-

tial merit. We will therefore only refer to such of the instructions as in our opinion merit consideration.

The eighth instruction tells the jury that the acquittal of Niles at the March term, 1919, of the city court upon the charge of receiving the Paxton automobile for his own gain and to prevent the owner from again possessing it, knowing it to have been stolen, should not control their verdict in this case; that the only question for the jury to try is whether Niles was put on trial on that charge, was lawfully sworn to testify to the truth and testified as a witness in his own behalf, and whether in his testimony in that case he willfully and corruptly testified falsely "to any material matter in that case, as charged in some count of the indictment in this case;" and if the jury believed beyond a reasonable doubt, from the evidence, that he did so willfully and corruptly testify falsely "to material matters in that case, as charged in some count in the indictment in this case," then the jury should find him guilty of perjury. The materiality of the testimony is a question of law and should not be submitted to the jury to determine as one of fact. (*People* v. *Glenn,* 294 Ill. 333.) Two instructions in *Young* v. *People,* 134 Ill. 37, which told the jury that if they believed, beyond a reasonable doubt, defendant willfully testified falsely in a material matter in the trial of a cause in court, "as charged in the indictment in this case," the jury should find him guilty of perjury, were held erroneous and reversible error. The court said: "In the first instruction the jury were directed to find the defendant guilty if he willfully testified falsely in a material matter on the trial of a cause in court, while the statute requires the false testimony, to make out perjury, to be 'in a matter material to the issue or point in question.' The defendant may have sworn falsely in a material matter and at the same time not sworn falsely in a matter material to the issue." In that case the instructions referred to the material matter "as charged in the indict-

ment," as the instruction does in this case, but they were held bad.

The ninth instruction is as follows:

"The court instructs the jury that the evidence of an accomplice in the commission of a crime is legal and competent evidence, and a conviction may be had on such testimony alone, although uncorroborated, if it is of such character as to satisfy you, and does satisfy you beyond all reasonable doubt, of the guilt of the defendant in the manner and form as charged in some one or more counts of the indictment."

It should not have been given in this case. Niles was being tried for perjury. He had no accomplice in that crime, and he could not be convicted of that offense on the uncorroborated testimony, alone, "of an accomplice" in the commission of the crime of stealing and receiving the Paxton automobile. Formerly the direct testimony of two witnesses was required to warrant a conviction of perjury, but that rule has been relaxed, so that now the direct testimony of one witness to the perjury, confirmed or corroborated by proof of other witnesses of material circumstances, may warrant a conviction. (*Mackin* v. *People*, 115 Ill. 312; *Hereford* v. *People*, 197 id. 222.) Apparently the instruction was intended to state that Niles' guilt of receiving the automobile, as charged in the indictment under which he was acquitted, might be warranted on the uncorroborated testimony of an accomplice. But Niles was not being tried for the crime of receiving the stolen automobile but for perjury in testifying falsely on the trial of that case in a matter material to the issue or point in question. The instruction was not applicable in this case and was misleading.

The eleventh instruction we think was inapplicable. It told the jury that proof to warrant a conviction need not be "direct evidence of persons who saw the crime committed;" that circumstantial evidence was legal and competent, and the crime might be proved by that character of evidence

if sufficient to exclude every reasonable doubt that defendant was guilty. It might have been a good instruction in the trial of Niles for receiving the stolen automobile but it was not applicable in this case.

The seventeenth instruction given for the People was as to the sufficiency of circumstantial evidence to justify a verdict of guilty of perjury and for the reasons before stated should not have been given.

Many other alleged errors of minor importance are discussed in the briefs, but what we have said will, we think, be sufficient to point out the course necessary to be pursued on a re-trial of the case.

For the errors in giving instructions for the People the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*