THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HAROLD BEASTON, Defendant-Appellant.

Second District   No. 76-131

Opinion filed December 14, 1977.

William B. Petty, of Mt. Carroll, for appellant.

Loren S. Golden, State's Attorney, of Mt. Carroll (Phyllis J. Perko and Barbara A. Preiner, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

Defendant was found guilty by a jury of the offenses of perjury and subornation of perjury under sections 32—2 and 32—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, pars. 32—2, 32—3) and was sentenced to a term of four years probation and fined a total of $5,000. He brings this appeal contending (1) that he was not proved guilty beyond a reasonable doubt; (2) that the trial court admitted into evidence prejudicial hearsay testimony over his objection; and (3) that the trial court erroneously instructed the jury as to admissions allegedly made by him.

Defendant and Ruth Ann Wilcox were social acquaintances and had periodically lived together in his home since the summer of 1973. In October of that year Wilcox and her minor daughter, Velma, were involved in a collision with another vehicle while Ruth Ann was driving defendant's truck which she had borrowed from him. The insurance carrier for the driver of the other vehicle settled a claim for personal injuries made by Ruth Ann and Velma for $150 and two bank drafts drawn on the insurance company were sent to defendant's home where Ruth Ann and Velma then lived. One of these drafts was made payable to Ruth Ann Wilcox for $100 and the other to Velma Wilcox and Ruth Ann Wilcox, as her mother, for $50. In March 1974 defendant deposited both drafts in his personal bank account and they then contained the defendant's name typed on the face of each of the drafts as an additional payee. The reverse side of each draft contained defendant's endorsement together with those of Ruth Ann and Velma Wilcox.

In August 1974, defendant was charged with having committed forgery in connection with these drafts. The record is not clear as to who was the complainant or alleged to have been defrauded by a forgery, but it appears that the charge was based upon the fact defendant's name was added as a payee and that he then endorsed and deposited the drafts in his account. During the trial of the forgery case in August 1974, both defendant and Ruth Ann Wilcox testified that she had owed him more than $200 at the time she received the drafts, as he had advanced mortgage payments on her house, and she had partially repaid the debt by endorsing the drafts in blank and giving them to him. Defendant also testified he then typed his name on the face of the drafts as an additional payee so that they could not be stolen from him and further negotiated

without his endorsement. Ruth Ann testified that defendant's name had not yet been inserted on the drafts at the time she had endorsed and delivered them to him. From this testimony, not unreasonably, the jury acquitted defendant of the forgery charges on the apparent premise no one had been defrauded.

At some time after his acquittal of forgery, defendant and Wilcox had a falling out and she then went to the State's Attorney of Carroll County and stated that Beaston had lied at the forgery trial and that she, Wilcox, had also lied at his insistence. Thereafter, in January 1975, the grand jury returned an indictment charging defendant with several counts of perjury and of the subornation of Ruth Ann Wilcox to commit perjury, based upon the testimony of defendant and Wilcox at the forgery trial. The statements alleged in the indictments to have constituted perjury consist of the following three answers to questions there asked of defendant by his attorney:

> "Q. At that time [February 1974, when the drafts were mailed to defendant's house] did Ruth Ann Wilcox owe you any money?
> A. Yes, she did.
>
> * * *
>
> Q. Did she voluntarily sign these two [drafts] over to you in payment of the debt?
> A. Yes.
>
> * * *
>
> Q. Did you make any threats or promises or allegations to her concerning her signing these [drafts] over to you at that time?
> A. None whatsoever."

The forgery trial testimony of Ruth Wilcox alleged in the indictment to be false statements made by her in the former trial at the request of defendant, was based upon her responses to questions propounded to her by defendant's counsel, as follows:

> "Q. Did you sign those two [drafts] of your own free will and under no duress?
> A. I sure did.
> Q. Did you owe Harold Beaston anything at the time you signed these checks?
> A. Yes, I did.
> Q. How much did you owe him?
> A. I owed him for back payments on a house and several other things.
>
> * * *
>
> Q. Turning this check over to the front you notice that Ruth Ann Wilcox and Harold Beaston's name appears thereon, was Harold Beaston's name on there at the time you endorsed it?

A. No, they weren't.

Q. So you endorsed it in blank and gave it to Harold Beaston, is that right?

A. I certainly did.

* * *

Q. And so the signature that you put on that check at that time was voluntary and of your own free will, is that true?

A. Yes Sir."

The following answer to a question asked of Ruth Ann on cross-examination by the State's Attorney at the forgery trial was also alleged to be a false statement made by her at the inducement of defendant:

"Q. Is it possible that when you received these [drafts] to endorse them over to Harold Beaston, is it possible that you overlooked the fact that his name was on there?

A. It certainly was not on there."

At his trial of the perjury and subornation of perjury charges defendant testified substantially the same as he had at his forgery trial. He stated Ruth Ann owed him money and voluntarily signed the two drafts over to him in partial payment of the debt and that he had made no threats or promises to induce her to do so. Wilcox, on the other hand, on this occasion testified that she had not owed defendant any money at the time she endorsed the drafts and that in fact he owed her money. She further testified she remembered endorsing them but that she was quite drunk at the time and defendant had told her that she was signing something that had to do with getting his truck fixed. She stated that because of her condition and defendant's misleading statement she had been tricked into signing the drafts. She also testified that she had seen defendant's name already typed on the front of the drafts when she signed them. Finally, she testified that after defendant was charged with forgery he told her she could come live with him in his home and promised he would marry her if she would lie for him at that trial, and on that basis she did so.

The State also introduced, over defendant's objection, the testimony of two of Wilcox' sisters and a friend who stated that Wilcox had made statements to them, before the forgery trial, that she was going to lie during the trial because defendant had promised to marry her if she did so.

The defendant's primary contention is that he was not proved guilty beyond a reasonable doubt because the State's evidence consisted solely of the uncorroborated testimony of Ruth Ann Wilcox that he made false statements and that he suborned her to make false statements. We agree and on this basis must reverse.

■■ The making of a false statement, an element of the offense of perjury, must, of course, be proved beyond a reasonable doubt. The early

rule in Illinois was that to support a conviction for perjury the direct testimony of two witnesses was required to establish the falsity of the statement upon which a perjury charge was predicated. As it now stands, the rule is that the evidence can be sufficient if presented by the direct testimony of only one witness if it is confirmed or corroborated by other evidence of material circumstances tending to establish the falsity of the alleged perjured statement. (*People v. Alkire* (1926), 321 Ill. 28, 151 N.E. 518; *People v. Niles* (1920), 295 Ill. 525, 129 N.E. 97; *Hereford v. People* (1902), 197 Ill. 222, 64 N.E. 310.) Although there does not appear to be an Illinois case directly on point, the weight of authority is that the same rule also applies to the proof of subornation of perjury insofar as proving the falsity of the matter alleged to be perjured. 70 C.J.S. *Perjury* §88 (1951); 60 Am. Jur. 2d *Perjury* §72 (1972).

■■ The perjury counts of this indictment charged, in substance, that defendant falsely testified in the forgery trial that Wilcox owed him money, that she voluntarily endorsed and delivered the drafts to him and that he did not make any threats or promises to her to induce her to do so. The subornation of perjury allegations of the indictment charged that defendant induced Wilcox to testify falsely to those matters. Defendant now argues that the testimony of Wilcox as to the falsity of the statements made by herself and defendant in the earlier trial is not corroborated by any other evidence as required by the rule. In his brief defendant has argued at length that the testimony of Wilcox' sisters and friend was erroneously admitted hearsay, offered by the State in an attempt to corroborate Wilcox' in-court testimony, and may not properly be considered to provide that necessary element to sustain his conviction. We agree that testimony cannot corroborate Wilcox; certainly the rule requiring corroboration of a single witness to sustain a perjury charge would not permit that witness, in effect, to corroborate herself by such means. The State, however, sets forth other circumstances in the evidence which it contends provided the necessary corroboration of Wilcox' testimony to establish defendant's guilt beyond a reasonable doubt under the rule.

■■ The State relies for corroboration on defendant's testimony in the perjury trial that he first called the insurance company claims' office and asked them, unsuccessfully, to add his name as a payee on the drafts, that the drafts were sent to defendant's home by the company and that he typed his name as an additional payee on the drafts. The State also suggests the "sloppy" endorsements by Wilcox on the drafts tend to support her testimony she was intoxicated when she signed them. We believe these circumstances fall far short of providing corroboration of Wilcox' present testimony charging false testimony by defendant in the forgery trial. Essentially all of the evidence provided to establish these

offenses is based upon the testimony of one who admits to being a perjurer and who is not corroborated in any significant way as to which occasion she, in fact, did perjure herself, the forgery or the perjury trial.

While the degree of corroboration necessary in such cases has not often been discussed in the Illinois decisions, in *Hereford v. People* (1902), 197 Ill. 222, 64 N.E. 310, where defendant was tried for having committed perjury in a divorce proceeding, the direct testimony of the falsity of his trial testimony by his daughter corroborated by evidence of a letter written by defendant were deemed sufficient to sustain the perjury conviction where both were inconsistent with defendant's testimony in the divorce proceeding. See also 70 C.J.S. *Perjury* §70b (1951); 60 Am. Jur. 2d *Perjury* §63 (1972); Annot., 111 A.L.R. 825 (1937); Annot., 56 A.L.R. 407 (1928).

While we do not suggest *Hereford* sets a minimum standard of the degree of corroboration necessary to support a perjury or subornation conviction, the totality of the evidence in this case is particularly unsatisfactory. The conviction stands now on the uncorroborated testimony under oath of Wilcox that she had lied under oath at an earlier trial and her present claim that defendant had there also lied under oath. It is, of course, the function of the jury to determine the credibility of any witness and the weight to be given to the testimony of that witness and we may not properly interfere in that judgment. However, in this case, as we have pointed out, as in all similar prosecutions, a necessary element of the offense of perjury and subornation of perjury is corroboration of the single witness presented and it is lacking here.

In view of our finding that defendant's guilt of these offenses has not been proved by the appropriate quantum of evidence and that the convictions must be reversed, it is not necessary that we decide other assignments of error relating to the prior consistent statement exception to the hearsay rule (see *People v. VanZile* (1977), 48 Ill. App. 3d 972, 980-82, 363 N.E.2d 429, 435-36) and the propriety of giving IPI Criminal No. 3.06 (Illinois Pattern Jury Instructions, Criminal, No. 3.06 (1968)) relating to admissions by a defendant (see *People v. Price* (1975), 32 Ill. App. 3d 610, 613-14, 336 N.E.2d 56, 58-59).

For these reasons the judgment of the Circuit Court of Carroll County will be reversed.

Reversed.

RECHENMACHER, P. J., and BOYLE, J., concur.